**GUST ROSENFELD P.L.C.**
201 E. Washington, Suite 800
Phoenix, AZ  85004-2327
(602) 257-7422
Richard A. Segal - 000877
rasegal@gustlaw.com

**Attorneys for** Plaintiff POURfect Products,
    a division of DYCE LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>       Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of  Whirlpool Corporation, a Delaware corporation,<br><br>       Defendant. | No.<br><br>**COMPLAINT**<br><br>**and**<br><br>**REQUEST FOR JURY TRIAL** |

Plaintiff alleges as follows:

COUNT ONE
Antitrust Violation

1.     This complaint is filed and this action is instituted against the defendant under Section 2 of the Act of Congress of July 2, 1890, 15 U.S.C. § 2, as amended and supplemented, commonly known as the Sherman Act, and Sections 4 and 16 of the Act of Congress of October 15, 1914, 15 U.S.C. §§ 15 and 26, as amended and supplemented, commonly known as the Clayton Act.

2.     The purpose of this action is to recover damages against defendant for injuring the plaintiff, which injury proximately resulted from defendant's violation of the antitrust laws of the United States, and to restrain and enjoin defendant from continuing the illegal monopoly in restraint of trade and commerce to the injury of plaintiff.

3.      The defendant transacts business and is found within the District.

4.      Plaintiff POURfect Products ("POURfect") is a division of DYCE LLC, an Arizona limited liability company.  Defendant KitchenAid is a division of Whirlpool Corporation, a Delaware corporation doing business in Arizona and authorized to do business in Arizona.

5.      KitchenAid manufactures and sells, among other products, KitchenAid stand mixers directly to consumers and through retail outlets in interstate commerce throughout the United States and in many foreign countries.  KitchenAid sells approximately 2,000,000 stand mixers annually.  It is estimated that there are over 25,000,000 KitchenAid stand mixers in use.

6.      KitchenAid sells replacement attachments for its stand mixers directly to consumers and through retailers.

7.      KitchenAid has market power to exclude competition in the aftermarket for stand mixer attachments in the United States and other countries.

8.      POURfect produces and sells aftermarket beaters for KitchenAid stand mixers under the name "Scrape-A-Bowl."  Scrape-A-Bowl beaters offer convenience and efficiency to KitchenAid stand mixer users by eliminating a separate manual operation in the mixing process.

9.      In early 2009, POURfect had existing and prospective contracts with retailers to supply Scrape-A-Bowl beaters to be sold as aftermarket attachments for KitchenAid stand mixers.  These contracts would have resulted in sales by POURfect to retailers in an amount not less than of $8,000,000 in 2010.

10.     In May 2009, KitchenAid exercised its market power by advising its trade customers, *i.e.*, retailers, that "bowl-scraper accessories" may shorten the life of the stand mixer motor and cause damage that would be excluded from warranty coverage. KitchenAid represented to the trade customers that it had conducted tests that showed

1  that the use of bowl-scraper beaters caused motor temperatures to exceed those allowed

2  under Underwriters Laboratories' requirements.  The tests performed by KitchenAid did

3  not conform to the Underwriters Laboratories requirements and did not fairly test the

4  bowl-scraper beaters in a manner generally representative of actual service conditions.

5  KitchenAid made these representations to its trade customers knowing that attachments

6  supplied by KitchenAid, including the dough hook, grain mill, meat grinder, and ice

7  cream maker, caused greater motor loads than did Scrape-A-Bowl beaters under actual

8  service conditions.  KitchenAid had issued no warnings to its trade customers and

9  customers regarding any disadvantages or hazards from the use of attachments supplied

10  by KitchenAid even though they caused greater motor loads than Scrape-A-Bowl

11  beaters under actual service conditions.

12       11.     By providing false and misleading information regarding Scrape-A-Bowl

13  beaters, KitchenAid acted with a specific intent to destroy competition.  Because

14  KitchenAid knew that its statements were false, its conduct was predatory and anti-

15  competitive and was directed at accomplishing the destruction of competition.

16  KitchenAid's conduct created a dangerous probability of achieving monopoly power

17  over the aftermarket attachment market.  KitchenAid's conduct caused antitrust injury

18  to plaintiff by depriving plaintiff of profits it would have received in a competitive

19  market.

20       12.     By virtue of its influence over its trade customers at the retail level of the

21  market, KitchenAid possessed monopoly power in the relevant market of aftermarket

22  attachments.  KitchenAid willfully acquired and maintained that monopoly power.

23  KitchenAid's conduct caused antitrust injury to plaintiff by depriving plaintiff of profits

24  it would have received in a competitive market.

25       13.     As a result of KitchenAid's monopolization and attempt to monopolize, as

26  alleged above, there has been harm to competition in the relevant market, which has

1    caused POURfect's loss of profits it would have otherwise received in an amount not

2    less than $6,000,000.

3         14.    POURfect is entitled to an injunction permanently enjoining KitchenAid

4    from continuing the monopolization and attempt to monopolize in violation of Section 2

5    of the Sherman Act (15 U.S.C. § 2).

6                WHEREFORE, POURfect prays:

7         1.    That KitchenAid be found to have violated Section 2 of the

8    Sherman Act (15 U.S.C. § 2).

9         2.    That judgment be entered against KitchenAid for treble the amount

10   of damages suffered by POURfect in accordance with Section 4 of the Clayton Act

11   (15 U.S.C. § 15).

12        3.    That KitchenAid be permanently enjoined from continuing the

13   monopolization of the market and attempt to monopolize the market for aftermarket

14   beater attachments for KitchenAid stand mixers.

15        4.    That POURfect be awarded its costs of suit and reasonable attorney

16   fees as required by Section 4 of the Clayton Act (15 U.S.C. § 15), and simple interest on

17   actual damages for the period beginning on the date of service of this complaint on

18   KitchenAid and ending on the date of judgment, as permitted by Section 4 of the

19   Clayton Act (15 U.S.C. § 15).

20        5.    That POURfect have such other and further relief as the court

21   deems equitable and proper.

22

                                 COUNT TWO
23                     State Law Claim for Product Disparagement

24        15.    KitchenAid manufactures and sells, among other products, KitchenAid

25   stand mixers directly to consumers and through retail outlets in interstate commerce

26   throughout the United States and in many foreign countries.  KitchenAid sells

1   approximately 2,000,000 stand mixers annually.  It is estimated that there are over

2   25,000,000 KitchenAid stand mixers in use.

3          16.    KitchenAid sells aftermarket attachments for its stand mixers directly to

4   consumers and through retailers.

5          17.    POURfect produces and sells aftermarket beaters for KitchenAid stand

6   mixers under the name "Scrape-A-Bowl."  Scrape-A-Bowl beaters offer convenience

7   and efficiency to Kitchen stand mixer users by eliminating a separate manual operation

8   in the mixing process.

9          18.    In early 2009, POURfect had existing and prospective contracts with

10  retailers to supply Scrape-A-Bowl beaters to be sold as aftermarket attachments for

11  KitchenAid stand mixers.  These contracts would have resulted in sales by POURfect to

12  retailers in an amount not less than $8,000,000 in 2010.

13         19.    In May 2009, KitchenAid exercised its market power by advising its trade

14  customers, *i.e*., retailers, that "bowl-scraper accessories" may shorten the life of the

15  stand mixer motor and cause damage that would be excluded from warranty coverage.

16  KitchenAid represented to the trade customers that it had conducted tests that showed

17  that the use of bowl-scraper beaters caused motor temperatures to exceed those allowed

18  under Underwriters Laboratories' requirements.  The tests performed by KitchenAid did

19  not conform to the Underwriters Laboratories requirements and did not fairly test the

20  bowl-scraper beaters in a manner generally representative of actual service conditions.

21  KitchenAid made these representations to its trade customers knowing that attachments

22  supplied by KitchenAid, including the dough hook, grain mill, meat grinder, and ice

23  cream maker, caused greater motor loads than did Scrape-A-Bowl beaters under actual

24  service conditions.  KitchenAid had issued no warnings to its trade customers and

25  customers regarding any disadvantages or hazards from the use of attachments supplied

26  by KitchenAid even though they caused greater motor loads than Scrape-A-Bowl

1   beaters under actual service conditions.

2       20.    KitchenAid's false statements regarding bowl-scraper attachments were

3   made with the intent to implicate POURfect's Scrape-A-Bowl beaters.  These

4   statements constituted product disparagement of POURfect's Scrape-A-Bowl beaters.

5       21.    KitchenAid's false statements regarding POURfect's Scrape-A-Bowl

6   beaters were made with knowledge of their falsity and with intent to deprive POURfect

7   of sales.  KitchenAid's conduct warrants an award of punitive damages.

8       22.    As a result of KitchenAid's disparagement of POURfect's products,

9   POURfect lost and will continue to lose a large number of sales and a large amount of

10  profits from those sales, in an amount within the subject matter jurisdiction of this court.

11          WHEREFORE, POURfect prays:

12      1.     That judgment be entered against KitchenAid for the amount of

13  POURfect's compensatory and punitive damages proved at trial.

14      2.     That POURfect be awarded its costs of suit.

15      3.     That POURfect have such other and further relief as the court

16  deems equitable and proper.

17
                                COUNT THREE
18              State Law Claim for Interference with Contractual Relations

19      23.    KitchenAid manufactures and sells, among other products, KitchenAid

20  stand mixers directly to consumers and through retail outlets in interstate commerce

21  throughout the United States and in many foreign countries.  KitchenAid sells

22  approximately 2,000,000 stand mixers annually.  It is estimated that there are over

23  25,000,000 KitchenAid stand mixers in use.

24      24.    KitchenAid sells aftermarket attachments for its stand mixers directly to

25  consumers and through retailers.

26  . . .

25.      POURfect produces and sells aftermarket beaters for KitchenAid stand mixers under the name "Scrape-A-Bowl."  Scrape-A-Bowl beaters offer convenience and efficiency to Kitchen stand mixer users by eliminating a separate manual operation in the mixing process.

26.      In early 2009, POURfect had existing and prospective contracts with retailers to supply Scrape-A-Bowl beaters to be sold as aftermarket attachments for KitchenAid stand mixers.  These contracts would have resulted in sales by POURfect to retailers in an amount not less than $8,000,000 in 2010.

27.      In May 2009, KitchenAid exercised its market power by advising its trade customers, *i.e.*, retailers, that "bowl-scraper accessories" may shorten the life of the stand mixer motor and cause damage that would be excluded from warranty coverage. KitchenAid represented to the trade customers that it had conducted tests that showed that the use of bowl-scraper beaters caused motor temperatures to exceed those allowed under Underwriters Laboratories' requirements.  The tests performed by KitchenAid did not conform to the Underwriters Laboratories requirements and did not fairly test the bowl-scraper beaters in a manner generally representative of actual service conditions. KitchenAid made these representations to its trade customers knowing that attachments supplied by KitchenAid, including the dough hook, grain mill, meat grinder, and ice cream maker, caused greater motor loads than did Scrape-A-Bowl beaters under actual service conditions.  KitchenAid had issued no warnings to its trade customers and customers regarding any disadvantages or hazards from the use of attachments supplied by KitchenAid even though they caused greater motor loads than Scrape-A-Bowl beaters under actual service conditions.

28.      KitchenAid's false statements regarding bowl-scraper attachments were made with the intent to include POURfect's Scrape-A-Bowl beaters.

. . .

29.     KitchenAid's false statements regarding POURfect's Scrape-A-Bowl beaters were made with knowledge of their falsity and with intent to deprive POURfect of sales.  KitchenAid's conduct warrants an award of punitive damages.

30.     At the time of KitchenAid's communications with its trade customers, KitchenAid knew that POURfect had contractual relations with some of those trade customers and the expectancy of contractual relations with other trade customers. KitchenAid's communications with trade customers regarding POURfect's products were intended by KitchenAid to cause a termination of the relationship or expectancy of a relationship between trade customers and POURfect.  As a result of the disruption of the relationships and expectancies, POURfect has been damaged in the amount of its unrealized profits from those relationships.

WHEREFORE, POURfect prays:

1.     That judgment be entered against KitchenAid for the amount of POURfect's compensatory and punitive damages proved at trial.

2.     That POURfect be awarded its costs of suit.

3.     That POURfect have such other and further relief as the court deems equitable and proper.

Dated: December 22, 2009.

GUST ROSENFELD P.L.C.

By   s/ Richard A. Segal #000877
       Richard A. Segal
       Attorneys for Plaintiff