LEWIS AND ROCA LLP
LAWYERS

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Randy Papetti, State Bar No. 014586
Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
EMail: RPapetti@LRLaw.com
David Weinzweig, State Bar No. 018687
Direct Dial: 602 262-5358
Direct Fax: 602 734-3883
EMail: David_Weinzweig@LRLaw.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main St., 17th Floor
Columbia, SC 29201
(803) 255-9410

Stephen G. Morrison (Pro Hac Vice application to be submitted)
E-Mail: steve.morrison@nelsonmullins.com
Robert H. Brunson (Pro Hac Vice application to be submitted)
E-Mail: robert.brunson@nelsonmullins.com

Attorneys for Defendant KitchenAid

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>Defendant. | No. CV 2009-02660-PHX-GMS<br><br>**DEFENDANT KIITCHENAID'S MOTION TO DISMISS** |

Defendant KitchenAid, a division of Whirlpool Corporation ("KitchenAid"), hereby moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The Complaint is an attempt to elevate a simple commercial dispute into an antitrust case with the use of buzz words and conclusory allegations, but the attempt fails because the Complaint does not—and cannot—allege sufficient facts to withstand the judicial scrutiny required under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Further, the state law commercial claims also fail to state sufficient facts to support a claim for relief. Accordingly, this matter should be dismissed in its entirety.




## INTRODUCTION

KitchenAid manufactures stand mixers and replacement attachments for those stand mixers. (Compl. ¶ 6). Plaintiff makes and sells a bowl-scraping accessory (the "Scrape-A-Bowl") for use with KitchenAid brand stand mixers. (Compl. ¶ 8). Plaintiff alleges that, in early 2009, it had unspecified existing and prospective contracts with unnamed retailers for purchases of the Scrape-A-Bowl that would have resulted in not less than $8,000,000 in revenue in 2010. (*Id.* ¶ 9). In May 2009, KitchenAid advised retailers that "bowl-scraper accessories" may shorten the life of the stand mixer motor and may cause damage that would be excluded from warranty coverage. (*Id.* ¶ 10). KitchenAid also advised an unspecified number of retailers that it had performed tests that showed that the use of bowl-scraper accessories caused motor temperatures to exceed those allowed under Underwriter Laboratories' requirements. (*Id.*). According to Plaintiff, the tests performed by KitchenAid "did not conform to the Underwriter Laboratories requirements and did not fairly test the bowl-scraper accessories in a manner generally representative of actual service conditions." (*Id.*). Plaintiff alleges that KitchenAid failed to inform retailers that certain attachments manufactured by KitchenAid cause greater motor loads than Plaintiff's product under actual service conditions. (*Id.*).

Significantly, Plaintiff does <u>not</u> allege how many retailers are still selling its product, or that it lacks alternative means to distribute its products, such as through Internet sellers (e.g., Amazon.com) or through Plaintiff's own website. Nor does Plaintiff allege that it – or any other makers of "bowl-scraper accessories" (or other accessories) – are unable to compete as a result of Defendants' alleged conduct. Rather, Plaintiff alleges only that it lost sales to an unspecified number of retailers.

Count One of Plaintiff's Complaint alleges that KitchenAid's communication to retailers violated Section 2 of the Sherman Act. (*Id.* ¶¶ 11-14). Count Two alleges that KitchenAid's communication to retailers unfairly disparaged Plaintiff's product in violation of Arizona state laws. (*Id.* ¶¶ 20-22). Count Three claims that KitchenAid's




communication to trade customers constituted an interference with Plaintiff's contracts in violation of Arizona state laws. (*Id.* ¶¶ 28-30).

**ARGUMENT**

**ALL COUNTS OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

The Supreme Court recently clarified the appropriate standard of review for a 12(b)(6) motion to dismiss in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the Supreme Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

*Id.* at 546 (internal citations omitted). The Court explained that, when reviewing the allegations in a complaint, a line separates conclusory and factual allegations. *Id.* at 557 n.5. Also, a line separates facts that are factually neutral and facts that are factually suggestive. *Id.* "Each [line] must be crossed to enter the realm of plausible liability." *Id.* The Supreme Court recently reaffirmed the *Twombly* standard and clarified that the *Twombly* standard applies to all civil causes of action. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-53, 173 L. Ed. 2d 868 (2009).

In this case, the Plaintiff has not provided sufficient facts to meet this standard for any of its three claims.

**I. PLAINTIFF FAILS TO STATE A CLAIM FOR MONOPOLIZATION.**

The *Twombly* pleading threshold arose in an antitrust case, and cases interpreting *Twombly* have noted that, when a plaintiff alleges antitrust claims, courts require a higher degree of specificity at the pleading stage "'before allowing a potentially massive factual controversy to proceed,' especially in light of the fact that 'antitrust discovery can be expensive.'" *Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL 3429568, 2 (N.D. Cal. 2009) (quoting *Twombly,* 550 U.S. at 544). Count One of Plaintiff's Complaint is a futile




attempt to transform this simple dispute over whether bowl scraping accessories impair the operation of kitchen mixers into a claim that KitchenAid is an illegal monopolist in an undefined market for an undefined product. As such, the Complaint here is precisely the sort of pleading *Twombly* sought to squelch.

To state a plausible claim for relief under Section 2 of the Sherman Act for actual monopolization,[1] Plaintiff must allege plausible facts with sufficient detail that Defendant both (1) engaged in anticompetitive conduct and, (2) through that conduct, acquired or maintained a monopoly in a properly defined relevant market. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398, 407 (2004). In order to pursue a damages claim under the antitrust laws,[2] plaintiff must also allege plausible facts with sufficient detail that KitchenAid's conduct caused "antitrust injury"—that is, that plaintiff's injury flows from misconduct that damaged competition itself, and not merely harmed plaintiff. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).

Here, Plaintiff fails to sufficiently allege a relevant market for the Court or Defendant to know what is monopolized; it fails to plead facts to make its conclusory allegations of monopoly power plausible, or that Defendant obtained or maintained monopoly power through anticompetitive conduct; and it fails to allege anticompetitive conduct that harmed competition and not merely Plaintiff. Because "[t]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiff[] can construct a claim from the events related in the complaint," Plaintiff's antitrust claims should be dismissed. *Twombly*, 550 U.S. at 558 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

---

[1] Plaintiff's attempted monopolization claim fails for the same reasons its actual monopolization claim fails.

[2] Plaintiff seeks an injunction "permanently enjoining KitchenAid from continuing the monopolization," (Compl. ¶ 14), but the only misconduct Plaintiff alleges occurred in May 2009; no continuing monopolistic or illegal behavior is alleged.



**A. The Allegations Fail to Establish Anticompetitive Conduct.**

Even if Plaintiff had sufficiently alleged that KitchenAid possesses a monopoly over a defined relevant market—which, as discussed below, Plaintiff has not—possessing a monopoly over a relevant market is not a violation of Section 2 of the Sherman Act unless the monopoly is acquired or maintained through "anticompetitive conduct." *See Verizon Commc'ns Inc.*, 540 U.S. at 407. For an act to constitute "anticompetitive conduct" for antitrust purposes, the Ninth Circuit Court of Appeals requires the act to either raise the prices of goods above competitive levels or diminish their quality. *Rebel Oil Co., Inc.*, 51 F.3d at 1433. Thus, the plaintiff must prove that the defendant's conduct harmed consumer welfare in the relevant market. *Id.*

"The legislators who passed the Sherman Act did not make ordinary business torts federal torts for which treble damages could be recovered." *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 655 (7th Cir. 1984). Accordingly, simply disparaging a competitor's product, as alleged by Plaintiff, is not anticompetitive conduct sufficient to support a monopolization claim.[3] Indeed, the Ninth Circuit has held that, "[w]hile the disparagement of a rival or compromising a rival's employee may be unethical and even impair the opportunities of a rival, its harmful effects on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act." *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). The Ninth Circuit requires a "'preliminary showing of significant and more-than-temporary harmful effects on *competition* (and not merely upon a competitor or customer)'" before disparaging comments will constitute "anticompetitive conduct." *Id.* (quoting 3 P. Areeda & D. Turner, *Antitrust Law* ¶ 737b at 278 (1978)) (emphasis in original). Specifically, for a plaintiff making an antitrust claim based on "disparaging comments" to show anticompetitive conduct sufficient to defeat a 12(b)(6) motion, plaintiff must affirmatively allege facts showing that the

3 Importantly, as noted below, the Complaint does not allege Defendant competes with Plaintiff in a defined market. Even if Plaintiff did make such an allegation, however, its allegations of anticompetitive conduct are deficient.



defendant's representations regarding plaintiff's product were "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals.'" *Id.* (quoting *National Ass'n of Pharmaceutical Mfrs. v. Ayerst Labs.,* 850 F.2d 904, 916 (2d Cir. 1988)).

Here, Plaintiff has not alleged facts making it plausible that Defendant's letter will have "significant and more-than-temporary harmful effects on *competition* (and not merely upon a competitor or customer)." In fact, Plaintiff has not alleged harm to (or the existence of) any competitor other than Plaintiff. *See LiveUniverse, Inc. v. MySpace. Inc.*, Case No. CV06-6994 AHM (RZx), 2007 U.S. Dist. LEXIS 43739, at **50 (C.D. Cal. June 4, 2007) (granting 12(b)(6) motion and stating that "[h]arm to one or more competitors is not sufficient to constitute antitrust injury unless a plaintiff alleges harm to the competitive process, which in turn harms consumers"), *aff'd*, No. 07-56604, 2008 WL 5341843 (9th Cir. Dec. 22, 2008) (summary order). Furthermore, Plaintiff has not pleaded sufficient facts to make each of the above six elements plausible. Not only does Plaintiff fail to specify "clearly false" statements in the letter, the alleged statements took place only in May 2009 and not over a prolonged period.[4] (*See* Compl. ¶ 10). Further, Plaintiff has not alleged any facts which would plausibly lead to the conclusion that Plaintiff is unable to conduct tests of its own and communicate the results to allegedly affected retailers, offsetting the results from the allegedly faulty tests conducted by Defendant. *See, e.g.*, *Tate v. Pacific Gas & Elec. Co.*, 230 F.Supp.2d 1072 (N.D. Cal. 2002) (granting 12(b)(6) motion where plaintiff failed to allege facts showing that plaintiff could not provide evidence refuting disparaging comments made by defendant).

Finally, and perhaps most importantly, Plaintiff has not alleged that any potential end users of Plaintiff's product received KitchenAid's letter; Plaintiff only alleges that retailers received the letter. Courts have only applied the six-element test from *American Professional Testing Service* in cases where the defendant's disparaging comments about

[4] The failure to allege a false statement is further addressed below in the Product Disparagement section.



a competitor's product or services were made to actual consumers of the product or services. In this case, even if Plaintiff had alleged that all recipients of KitchenAid's letter refused to sell Plaintiff's product as a result of the letter, Plaintiff has not alleged that it cannot sell its products to consumers through other channels of distribution (e.g., Amazon.com, Pourfectbowl.com). *See LiveUniverse, Inc.*, 2007 U.S. Dist. LEXIS 43739, at **47, 56-57 (granting 12(b)(6) motion as to plaintiff's antitrust claim because plaintiff alleged only that defendant had closed one of many channels by which customers could select plaintiff's product).

Plaintiff also does not allege that KitchenAid's conduct either raised prices or diminished quality, as is required by the Ninth Circuit for a monopolization claim in any context. *See Rebel Oil Co., Inc.*, 51 F.3d at 1433. The only consequence of KitchenAid's conduct that is alleged is the loss of sales to an unspecified number of customers by one seller (i.e., Plaintiff). The United States Supreme Court, however, has consistently held such losses, in the absence of injury to competition itself, are insufficient to establish anticompetitive conduct:

> It is axiomatic that the antitrust laws were passed for "the protection of *competition,* not *competitors.*" . . . Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or "purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224-25 (1993) (internal citations omitted) (emphasis in original).

In *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887 (10th Cir. 1991), the Tenth Circuit granted a directed verdict motion dismissing a monopolization suit much like this one precisely because plaintiff failed to make the required showing of an effect on price or quality. In *Bacchus*, the plaintiff competed with the defendant in the market for water coolers.[5] Plaintiff filed a suit after Defendant sent a memorandum to various water cooler sales representatives warning them that fiberglass, a material

[5] Plaintiff's claim is even weaker than the claim in *Bacchus* because here, unlike in *Bacchus*, Plaintiff does not allege that KitchenAid sells a product which competes with Plaintiff's product.



included in plaintiff's water coolers, was flammable, and attached an article about a fire occurring at plaintiff's plant. *Id.* at 889. Defendant also distributed test results showing that fiberglass coolers were more flammable than other water coolers. *Id.* at 889-90. Plaintiff disputed the information in the memoranda and brought a suit alleging commercial disparagement and monopolization. In holding that the plaintiff had not shown that defendant had established a monopoly through "anticompetitive conduct," the court held:

> However, Bacchus failed to present sufficient evidence to show that Arvin could propel itself to monopoly status as a result of predatory practices. Bacchus presented no evidence of Arvin's ability to control prices. With respect to Arvin's ability to eliminate competitors, Bacchus relied on its assertions that Arvin unfairly characterized the Bacchus cooler as a fire hazard in order to eliminate Bacchus as a competitor. However, the main purpose of the antitrust laws is to preserve and promote competition and not to protect a single competitor. Whether or not a practice violates the antitrust laws is determined by its effect on competition and not its effect on an individual competitor.

*Id.* at 894.

Because Plaintiff fails to allege that Defendant engaged in "anticompetitive conduct," Plaintiff's monopolization claim should be dismissed.[6]

**B. Plaintiff Fails to Allege a Relevant Market.**

Even if anticompetitive conduct was alleged, the Complaint fails to define the relevant market supposedly being monopolized. The "relevant market" includes both a relevant geographic market and a relevant product market. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (quoting *Oltz v. St. Peter's Cmty. Hosp.,* 861 F.2d 1440, 1446 (9th Cir. 1988)). Because the scope of the relevant market is the threshold question in a monopolization suit, "[f]ailure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka*, 252 F.3d, 1063 (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1105 (9th Cir. 1999)).

---

[6] Because Plaintiff has not sufficiently alleged "anticompetitive conduct," Plaintiff cannot possibly allege antitrust injury. *See Rebel Oil Co., Inc.*, 51 F.3d at 1433 ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition.").



Here, Plaintiff's first mention of a product or geographic market is in paragraph 7 of the Complaint, which states: "KitchenAid has market power to exclude competition in the aftermarket for stand mixer attachments in the United States and other countries." (Compl. ¶ 7). From this paragraph, the relevant product market would presumably include any product that could be attached to a stand mixer of any kind. The geographic market would include the entire United States and an unspecified group of "other countries." The Complaint never clarifies which "other countries" are included in the geographic market, making Plaintiff's open-ended geographic market allegations insufficient as a matter of law. *See, e.g.*, *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

Paragraphs 11 and 12 of the Complaint refer to a product market of "aftermarket attachments," but it fails to specify the product or products to which the attachments attach. (Compl. ¶¶ 11-12). In paragraph 3 of the Prayer for Relief, however, Plaintiff requests "[t]hat KitchenAid be permanently enjoined from continuing the monopolization of the market and attempt to monopolize the market for aftermarket beater attachments for KitchenAid stand mixers." (Compl. ¶ 3 of Count One Prayer for Relief). This market is entirely different from the prior iterations mentioned in paragraphs 7, 11, or 12. The product market mentioned in the antitrust Prayer for Relief section would be limited to a single type of attachment ("beater attachments") for a single brand (KitchenAid) of a single type of mixer (a stand mixer). Plaintiff's failure to allege a discernable relevant market requires dismissal. *See, e.g.*, *Audo Car Stereo, Inc. v. Little Guys, Inc.*, 2004 WL 3019298, 7 (N.D. Ill. 2004) (dismissing antitrust complaint where plaintiff referenced different categories of products without specifying which category was the relevant market).

Furthermore, Plaintiff fails to allege any facts to support the plausibility of any relevant market. "A complaint is subject to dismissal for failure to allege sufficient facts to support a cognizable product market." (*Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*, 2009 WL 4723739, 2 (N.D. Cal. 2009) (citing *Tanaka* 252 F.3d, 1063-64).



Specifically, to survive a 12(b)(6) motion to dismiss, "the relevant market must 'encompass the product at issue as well as all economic substitutes for the product.'" *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, 13 (N.D. Cal. 2009) (quoting *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1045 (9th Cir.2008)). Plaintiff has failed to allege any facts regarding the interchangeability of products within a specific relevant market or the cross-elasticity of demand between products within a specific relevant market.[7] For this additional reason, Plaintiff's antitrust claim should be dismissed. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (dismissing antitrust complaint where plaintiff failed to allege "that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within this geographic market"); *see also Golden Gate Pharmacy Services, Inc.*, 2009 WL 4723739, at *3 (N.D. Cal. 2009) (dismissing plaintiff's complaint based on failure to allege any facts supporting interchangeability of the products in the proposed relevant market); *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) ("Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

Because Plaintiff has brought a monopolization claim without adequately defining a relevant market, Count 1 must be dismissed.

**C. Plaintiff Fails to Allege Facts to Support Its Claim that KitchenAid Has Monopoly Power.**

Because Plaintiff does not adequately define the relevant market, it obviously cannot adequately allege what is being monopolized or to what extent. The conclusory monopoly power allegation merely states, "By virtue of its influence over its trade customers at the retail level of the market, KitchenAid possessed monopoly power in the relevant market of aftermarket attachments." (Compl. ¶ 12). This statement is precisely

[7] In fact, Plaintiff fails to even allege the purpose of the "Scrape-A-Bowl"—the product which Plaintiff allegedly has not been able to sell because of KitchenAid's antitrust violation. Plaintiff only states that Scrape-A-Bowls "offer convenience and efficiency to KitchenAid stand mixer users by eliminating a separate manual operation in the mixing process." (Compl. ¶ 8).



the sort of "formulaic recitation of a cause of action's elements" which is insufficient under the *Twombly* pleading requirements. *See, e.g.*, *Korea Kumho Petrochemical v. Flexsys America LP*, 2008 WL 686834, 9 (N.D. Cal. 2008) (dismissing plaintiff's monopolization claim because plaintiff failed to allege specific facts supporting its assertion that defendant held market power); *McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*, WL 2437739, 8-9 (D. Hawaii 2008) (dismissing plaintiff's monopolization claim because its allegations of monopoly power were insufficient).

Plaintiff cannot properly allege monopoly power without providing plausible factual allegations showing that KitchenAid has sufficient market power to constitute a monopoly in a properly defined relevant market. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997). Here, however, Plaintiff does not even attempt to articulate who competes in the relevant market, whether there are barriers to entry into the relevant market and how Defendant has market power in the relevant market. Indeed, Plaintiff does not even allege that KitchenAid sells competing products in the relevant market.

In sum, Plaintiff has not alleged a single fact supporting its assertion that Defendant has monopoly power in a relevant market, regardless of how that relevant market is defined. Plaintiff has simply made a conclusory assertion that Defendant has monopoly power in paragraph 12 of its Complaint, and this is insufficient.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR PRODUCT DISPARAGEMENT.

### A. Plaintiff Fails to Sufficiently Assert that Defendant Made any False Statements.

The Arizona Court of Appeals has stated that Product Disparagement and Trade Libel are causes of action describing the tort most often referred to as Injurious Falsehood. *Fillmore v. Maricopa Water Processing Systems, Inc.*, 211 Ariz. 269, 120 P.3d 697, 703 (App. 2005) *opinion ordered depublished by* 129 P.3d 937 (2006). To state a claim for Injurious Falsehood, a plaintiff must allege the defendant made a statement or statements to a third party knowing that the statement or statements were false, in an effort to persuade the third party from dealing with the plaintiff. *Fillmore*,



120 P.3d at 703. Also, the statement or statements must have resulted in a pecuniary loss to the plaintiff. *Id.*

Here, Plaintiff alleges KitchenAid made two representations disparaging Plaintiff's product: (1) "that 'bowl-scraper accessories' may shorten the life of the stand mixer and cause damage that would be excluded from warranty coverage," and (2) "that [KitchenAid] had conducted tests that showed that the use of bowl-scraper beaters caused motor temperatures to exceed those allowed under Underwriter Laboratories' requirements." (Compl. ¶ 19). Plaintiff does not, however, allege KitchenAid did not, in fact, conduct testing which demonstrated the results it communicated to its trade customers. Rather, the Plaintiff admits that tests were conducted, but asserts that the tests "did not conform to Underwriters Laboratories' requirements and did not fairly test the bowl-scraper beaters in a manner generally representative of actual service conditions." (*Id.* ¶ 19). Thus, Plaintiff alleges that KitchenAid's tests were perhaps flawed, but does not allege that KitchenAid made a false statement.

**B. KitchenAid's Statements Were Privileged Communications Made in Furtherance of an Interest of Social Importance.**

KitchenAid's statements to retailers of its product that the use of KitchenAid stand mixers with bowl scraping attachments may cause excessive motor temperatures and create possible safety hazards were statements made in the public interest, and hence they are protected by the public interest privilege. The Arizona Supreme Court has recognized that "conduct which otherwise would be actionable is to escape liability" when the defendant "is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Green Acres Trust v. London*, 141 Ariz. 609, 612-13, 688 P.2d 617, 620-21 (1984). The qualified or conditional privilege is based on the social utility of protecting statements required to be made in response to a legal, moral or social duty. *Id.* To evaluate a privilege defense, the court must first determine whether a privileged occasion arose, and, if so, whether the privilege was abused. *Green Acres*, 141 Ariz. at 613. A privileged



occasion arises when the circumstances in which the communications are made create an obligation to speak. *Id.* at 613.

Here, a privileged occasion clearly arose. The Arizona Court of Appeals has held that a manufacturer has the duty to provide adequate warnings to the foreseeable consumer regarding hazards of which the manufacturer knows, or should know through testing or other investigation. *See Maake v. Ross Operating Valve Co.*, 149 Ariz. 244, 247, 717 P.2d 923, 926 (App. 1985); *Foremost-McKesson Corp. v. Allied Chemical Co.*, 140 Ariz. 108, 112, 680 P.2d 818, 823 (App. 1983) ("[T]he manufacturer . . . bears the heavy burden of discovering the product's dangers to the foreseeable user and providing the warning regarding those dangers."). Further, the applicable Underwriters Laboratories Standard requires appliance manufacturers to state in their operating manual that "The use of attachments not recommended or sold by the manufacturer may cause fire, electric shock or injury." UNDERWRITER LAB. STANDARD 982, § 69.1(g) (June 19, 2009). Accordingly, the Court should conclude as a matter of law that when Defendant discovered from testing and customer complaints that certain after-market modifications to a product create potential hazards to consumers, an occasion of public interest privilege arose.

KitchenAid recognizes this argument is being made in the context of a Rule 12(b)(6) motion. Generally, whether a privileged occasion arose is a question of law for the court, and whether the occasion for the privilege was abused is a question of fact for the jury. *Green Acres*, 141 Ariz. at 613-14. However, "a court may find that there was no abuse in the absence of evidence of actual malice or excessive publication." *See Morley v. Smith*, 309 Fed. Appx. 103, 105, 2009 WL 118925 at *1 (9th Cir. 2009) (citing *Green Acres*, 141 Ariz. at 624)). Here, the Complaint fails to assert any conduct on the part of KitchenAid from which actual malice or excessive publication could be found. Actual malice occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth. *Green Acres*, 141 Ariz. at 624. Abuse through excessive publication occurs when the information is published to an




unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded. *Id.* Particularly in light of disclosures required by Underwriters Laboratories, the Complaint fails to sufficiently allege that the statements KitchenAid made were false, let alone made with malice, and Plaintiff admits that the recipients were retailers, the exact parties needing to be informed.

**III. PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.**

To plead an action for intentional interference with contractual relations, a plaintiff must identify the specific relationship or relationships with which the defendant interfered. *See Dube v. Likins*, 216 Ariz. 406, 413-14, 167 P.3d 93, 101 (App. 2007) (citing *Stewart Title Guar. Co. v. Am. Abstract & Title Co.,* 215 S.W.3d 596, 603 (Ark. 2005) (providing that to state a tortious interference claim some precise business expectancy or contractual relationship must be obstructed)). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Dube*, 216 Ariz. at 414.

Plaintiff does not allege interference with any specific existing or prospective contract. Rather, Plaintiff merely alleges that it had existing and prospective contracts that would have resulted in sales to unnamed retailers "in an amount not less than $8,000,000 in 2010." (Compl. ¶ 26). As to KitchenAid's knowledge of those contracts, Plaintiff flatly asserts that KitchenAid knew Plaintiff "had contractual relations with some of [KitchenAid's] trade customers and the expectancy of contractual relations with other trade customers." (Compl.¶ 30) The pleading standard set forth in *Twombly* requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 546. Plaintiff should be required to allege plausible facts specifying which relationships KitchenAid allegedly interfered with and what interference occurred. As it stands, Plaintiff's claim for intentional interference

should be dismissed because Plaintiff does not state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**CONCLUSION**

For all of the foregoing reasons, Defendant respectfully moves the Court to dismiss Plaintiff's Complaint, with prejudice.

DATED this 5th day of February 2010.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: Steven G. Morrison
Robert H. Brunson

- and -

LEWIS AND ROCA LLP

By /s/ Randy Papetti
Randy Papetti
David Weinzweig
Attorneys for Defendant KitchenAid

CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2010, I electronically transmitted the attached document to the clerk of the U.S. District court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following parties:

Richard A. Segal rasegal@gustlaw.com
Gust Rosenfeld P.L.C.
Attorney for Plaintiff

/s/ Carole Hanger