**GUST ROSENFELD P.L.C.**
201 E. Washington, Suite 800
Phoenix, AZ 85004-2327
(602) 257-7422
Richard A. Segal - 000877
rasegal@gustlaw.com

**Attorneys for** Plaintiff POURfect Products, a division
  Of DYCE LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>Defendants. | No. 2:09-cv-02660-GMS<br><br>**PLAINTIFF'S RESPONSE TO KITCHENAID'S MOTION TO DISMISS** |

<u>The Antitrust Claim</u>

KitchenAid uses its market power by telling retailers that sell its stand mixers that POURfect's products are harmful to the stand mixers. KitchenAid's statements that POURfect's products will harm the stand mixers are false. At the same time KitchenAid makes these statements, it sells through these retailers KitchenAid-manufactured attachments that are more harmful to stand mixers than POURfect's products. As expected, retailers misled by KitchenAid did not sell POURfect's products, depriving stand mixer customers of the opportunity to purchase POURfect products as a useful and desirable attachment to the KitchenAid stand mixer. KitchenAid's false advice to retailers has excluded POURfect's product from the major retail market for stand mixer attachments and prohibited consumers from acquiring

POURfect's product as an attachment from these retailers. These facts are pleaded in the complaint and, for purposes of this motion to dismiss, must be taken as true.

The availability of relief under the antitrust laws for these circumstances is confirmed in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ("*Image Tech II*"). *Image Tech II* describes the long journey of independent servicers of Kodak equipment to whom Kodak refused to sell replacement parts. The servicers filed suit against Kodak in 1987. In 1988, following brief discovery, Kodak was granted summary judgment. Summary judgment was reversed in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 903 F.2d 612 (9th Cir. 1990) ("*Image Tech I*"). The Supreme Court affirmed the denial of summary judgment in *Eastman Kodak Co. v. Image Technical Serv., Inc.*, 504 U.S. 451 (1992) (*Image Tech II* refers to the Supreme Court decision as "*Kodak*", which will be done here.) After remand, the case proceeded to trial only as to the Sherman Act § 2 claims. *Image Tech II* followed that trial, and, with some exceptions, affirmed the verdict against Kodak.

*Image Tech II* sets forth a number of controlling principles for this § 2 claim, citing both *Kodak* and other authority:

- "The Supreme Court also held that Kodak's lack of market power in the market for high volume photocopiers and micrographic equipment did not preclude, as a matter of law, the possibility of market power in the derivative aftermarkets for parts and service." 125 F.3d, at 1201.
- "Monopoly power is 'the power to control prices or exclude competition.'" 125 F.3d, at 1202.
- "Market power can be proven by either direct or circumstantial evidence." *Id.*
- "Ultimately what constitutes a relevant market is a factual determination for the jury." 125 F.3d, at 1203.

RAS:cls  1181666 2/19/2010                -2-

- "First, the [*Kodak*] Court held that service and parts could constitute separate markets." *Id.*
- "Second, the Supreme Court held that a single brand could constitute a separate market." *Id.*
- "The [*Kodak*] Court also recognized however, that the market definition here could 'be determined only after a factual inquiry into the commercial realities faced by consumers.'" *Id.*
- "The second element of a § 2 monopoly claim, the 'conduct' element, is the use of monopoly power 'to foreclose competition, to gain a competitive advantage, or to destroy a competitor.'" 125 F.3d, at 1208.
- "'Willful acquisition' or 'maintenance of monopoly power' involves 'exclusionary conduct', not power gained 'from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Id.*

*Image Tech II*, informed by *Kodak*, sets forth a complete analysis of the factual inquiry that is required in a § 2 monopolization claim. KitchenAid has used its market power to exclude POURfect from the retail market for aftermarket attachments for KitchenAid stand mixers in the United States. For the same reasons that the independent servicers of Kodak equipment survived a motion for summary judgment, this antitrust complaint, *a fortiori,* should survive a motion to dismiss for failure to state a claim.

## What About *Twombly*?

"We think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007). *Twombly* was a Sherman Act § 1 conspiracy case. The plaintiff needed to prove a combination or conspiracy. "It makes sense to say,

therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly* at 556. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss *does not need detailed factual allegations* . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief" requires more than labels and conclusions. . . ." *Twombly*, at 555 (emphasis supplied).

The entire discussion in *Twombly* involves § 1 claims, as does its holding.

> In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.

*Twombly* at 556. *Twombly* has not made it impossible to state a claim in an antitrust case, even a § 1 case. *Starr v. Sony*, ___ F.3d ___, 2010 WL 99346 (2d Cir. 2010) (reversing district court's Rule 12(b)(6) dismissal).

Nor are antitrust cases, especially § 2 cases, obliterated by *Ashcroft v. Iqbal*, ___ U.S. ___, 173 L.Ed.2d 868 (2009). *Iqbal* involved claims against federal officials by a Pakistani Muslim who was arrested following the September 11, 2001, terrorist attacks. It is not an antitrust case. It confirms, as the Supreme Court "held in *Twombly* . . . , the pleading standard Rule 8 announces does not require 'detailed factual allegations', but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 173 L.Ed.2d at 883. (Justice Souter, the author of *Twombly*, dissented in *Iqbal*, illustrating the difficulties faced by district judges and the rest of us in the trenches in applying the *Twombly* test.)

The antitrust count in POURfect's complaint is based entirely on § 2 and does not involve an agreement, combination, or conspiracy. None of these has been alleged by implication from conscious parallelism or otherwise. KitchenAid's unilateral action is set forth clearly, along with the market in which it occurred and the antitrust consequences. POURfect has stated an antitrust claim. It is entitled to proceed with it.

Supplemental Jurisdiction

This court has jurisdiction over the state law claims in Count Two and Count Three only because of the supplemental jurisdiction provisions of 28 U.S.C. § 1367.  If Count One, the only federal law claim, were dismissed, the provisions of § 1367(c) would require "a reasoned consideration." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). *Acri* repeats the often repeated Supreme Court rule that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Id.*  If there were no federal law claim, there would be no justification for the court to exercise supplemental jurisdiction over the state law claims at a stage in which the defendant has not yet answered.  Even if there were substantive grounds for dismissal of the state law claims, KitchenAid's request for a dismissal with prejudice would require an inappropriate exercise of the court's supplemental jurisdiction.

State Law Claim For Product Disparagement

Every element of this tort is contained in the factual allegations of the complaint.  KitchenAid relies improperly upon a depublished Arizona decision from 2005, *Fillmore v. Maricopa County Water Processing Systems, Inc.*, 211 Ariz. 269, 120 P.3d 697 (App. 2005), opinion ordered depublished by 212 Ariz. 215, 129 P.3d 937 (2006).  It is hard to know why KitchenAid made this improper citation.  The court of appeals *reversed* the Rule 12(b)(6) dismissal of a claim for injurious falsehood.  This complaint clearly alleges that KtichenAid's statements were false and that KitchenAid knew that they were false.  KitchenAid acknowledges that it has no authority that would terminate this claim by motion to dismiss.

Other authority cited by KitchenAid confirms the impropriety of a Rule 12(b)(6) dismissal under these circumstances.  In *Morley v. Smith*, 309 Fed.

1   Appx. 103 (9th Cir. 2009), the court makes it plain that the dismissal in that case was
2   affirmed only because the motion had been converted into a motion for summary
3   judgment in accordance with Rule 12(d).  The affirmative defense of privilege is not
4   before this court.  It does not appear in the allegations of the complaint.  The reference
5   to an Underwriters Laboratories standard in the motion to dismiss is outside the
6   complaint.  The claimed inferences upon which the affirmative defense of privilege
7   could be based are also outside the complaint.  POURfect objects to a Rule 12(d)
8   conversion to a motion for summary judgment in which it would be denied the
9   reasonable opportunity to present all pertinent material, as the rule demands.
10  KitchenAid offers no authority for the drastic relief it seeks against this count.

### State Law Claim For Interference With Contractual Relations

The complaint alleges that POURfect had contractual relations with KitchenAid's trade customers, and that KitchenAid knew this when it presented false information to the customers regarding POURfect's products.  There is no requirement that the particular customers be named in the complaint.  It is still the law that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . ."  *Twombly*, at 555.

KitchenAid's attack on this count also lacks legal authority to support the relief that KitchenAid seeks.

### Motion to Amend Complaint

POURfect requests leave to amend the complaint if any part of it is dismissed.

### Conclusion

The complaint contains allegations of fact to support every one of its theories.  The complaint does what a complaint is supposed to do.  It provides a specific framework for going forward with this case so that it can be resolved on its merits.

The motion to dismiss should be denied.

Respectfully submitted: February 19, 2010.

          GUST ROSENFELD P.L.C.

          By  s/ Richard A. Segal #000877
            Richard A. Segal
            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

  I hereby certify that on February 19, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randy Papetti
David Weinweig
LEWIS AND ROCA
40 N. Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
(602) 262-5311
RPapetti@LRLaw.com
David_Weinzweig@LRLaw.com

Steven Morrison
Robert Brunson
NELSON MULLINS RILEY & SCARBOROUGH, LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
(803) 255-9410
steve.morrison@nelsonmullins.com
Robert.brunson@nelsonmullins.com

Attorneys for Defendant KitchenAid

By  s/ C.L. Scherff