LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Randy Papetti, State Bar No. 014586
  Direct Dial: (602) 262-5337
  Direct Fax: (602) 734-3865
  EMail: RPapetti@LRLaw.com
David Weinzweig, State Bar No. 018687
  Direct Dial: 602 262-5358
  Direct Fax: 602 734-3883
  EMail: David_Weinzweig@LRLaw.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main St., 17ᵗʰ Floor
Columbia, SC 29201
(803) 255-9410

Stephen G. Morrison (Pro Hac Vice)
  E-Mail: steve.morrison@nelsonmullins.com
Robert H. Brunson (Pro Hac Vice)
  E-Mail: robert.brunson@nelsonmullins.com

Attorneys for Defendant KitchenAid

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>Defendant. | No. CV 2009-02660-PHX-GMS<br><br>**DEFENDANT KIITCHENAID'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

In its motion to dismiss (the "Motion"), KitchenAid identified specific deficiencies in each cause of action alleged in Plaintiff's Complaint. In its response to the Motion (the "Response"), Plaintiff does not justify, or in many cases even address, these deficiencies. Accordingly, KitchenAid respectfully requests that the Court dismiss Plaintiff's complaint in its entirety.

## I.        PLAINTIFF FAILS TO STATE A CLAIM FOR MONOPOLIZATION.

### A.        *Twombly* and *Iqbal* Apply Here.

Plaintiff appears to decline the burden of pleading claims in federal court as set forth in *Twombly* and *Iqbal*, opting instead to argue that the facts of those cases are distinguishable. However, merely showing that this matter is factually distinct from *Twombly* or *Iqbal* does not relieve Plaintiff from its obligation to meet the pleading

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

Case 2:09-cv-02660-GMS   Document 13   Filed 03/01/10   Page 2 of 10

1  standards set forth in those two cases, because, as the Supreme Court clearly held in

2  *Iqbal*, "*Twombly* expounded the pleading standard 'for **all** civil actions.'"  *Ashcroft v.*

3  *Iqbal*, 129 S. Ct. 1937, 1953 (2009) (emphasis added); *see also Facebook, Inc. v. Power*

4  *Ventures, Inc.*, No. 08-5780, 2009 WL 3429568, at 2 (N.D. Cal. Oct. 20, 2009)

5  (dismissing a monopolization claim based on *Twombly* and holding that all antitrust

6  claims require a higher degree of particularity in the pleadings).  Plaintiff has failed to

7  meet the standards that the Supreme Court requires.  In particular, Plaintiff's

8  monopolization claim is severely deficient under the *Twombly* pleading standard.

9       Indeed, most of KitchenAid's challenges to Plaintiff's antitrust claims remain

10  unaddressed.  Plaintiff's Complaint mentions several categories of products without

11  specifying a single relevant product market.  This is the most elementary pleading

12  requirement for a monopolization claim: definition of the relevant product market

13  allegedly being monopolized.  In addition, as made clear by abundant case law, Plaintiff's

14  Complaint must be dismissed because it fails to allege:

15  •  a *cognizable* relevant product market, which must be defined by referencing

16     interchangeable products;

17  •  "anticompetitive conduct," as that term is defined by cases applying the Sherman Act;

18  •  a single fact making plausible its assertion that KitchenAid possesses monopoly

19     power (over an undefined product market);

20  •  that KitchenAid sells a product which competes with, or is interchangeable with,

21     Plaintiff's product, begging the question of how KitchenAid could be a participant in,

22     much less a monopolist over, a relevant product market;

23  •  barriers to entry, supracompetitive prices, or reduction in quality, for any relevant

24     product market;

25  •  injury to competition generally, as opposed to mere injury to Plaintiff.

26

27

28




LEWIS
AND
ROCA
LLP
L A W Y E R S

**B.** **Plaintiff Fails to Sufficiently Allege Injury to Competition.**

Plaintiff alleges for the first time in its Response that, as a result of KitchenAid's conduct, stand mixer customers have been deprived "of the opportunity to purchase POURfect products as a useful and desirable attachment to the KitchenAid stand mixer." (*See* Response, at 1 (2/19/10)).[1]  By contrast, Plaintiff failed to allege in its Complaint any injury to consumer welfare, such as consumers lacking opportunity to purchase Plaintiff's product.  As KitchenAid argued initially in its Motion, the Complaint's failure to allege injury to competition generally, or to consumer welfare, constitutes grounds for dismissal.  *See Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1034-36 (9th Cir. 2001) (finding that district court properly granted motion to dismiss plaintiff's monopolization claim where plaintiff alleged injury to competitors, but not to competition); *LiveUniverse, Inc. v. MySpace. Inc.*, Case No. CV06-6994 AHM (RZx), 2007 U.S. Dist. LEXIS 43739, at **50 (C.D. Cal. June 4, 2007) (granting 12(b)(6) motion and stating that "[h]arm to one or more competitors is not sufficient to constitute antitrust injury unless a plaintiff alleges harm to the competitive process, which in turn harms consumers"), *aff'd*, No. 07-56604, 2008 WL 5341843 (9th Cir. Dec. 22, 2008) (summary order).  Further, even if Plaintiff had included this allegation in the Complaint, Plaintiff does not explain why it cannot sell, and customers cannot purchase, its product through some avenue other than the retailers who received KitchenAid's letter (e.g., other retailers, www.pourfectbowl.com, www.amazon.com, etc.).

**C.** **This Is Not a *Kodak* Moment.**

In its Response, Plaintiff relies heavily upon the Ninth Circuit decision of *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) (hereinafter referred to as "*Image Tech II*") and the Supreme Court decision of *Eastman Kodak Co. v. Image Technical Serv., Inc.*, 504 U.S. 451 (1992) (hereinafter referred to as "*Kodak*").  Plaintiff does not clearly explain how *Kodak* applies to the present case, but

---

[1] While Plaintiff states in the first paragraph of the Response that all the facts in the Response are alleged in the Complaint, this is simply not true.



1   Plaintiff's citations to the case indicate that Plaintiff intends to try to limit the relevant

2   product market to aftermarket products for KitchenAid brand stand mixers.  (*See*

3   Response, at 3) ("'Second, the Supreme Court held that a single brand could constitute a

4   separate market.'") (quoting *Image Technical Services, Inc.*, 125 F.3d at 1203).  This

5   intention is confirmed on the third page of the Response when Plaintiff makes reference

6   to a market that is limited to aftermarket attachments for KitchenAid brand stand mixers.

7   (Response, at 3) (referencing "the retail market for aftermarket attachments for

8   KitchenAid stand mixers in the United States").  As explained in KitchenAid's Motion,

9   such an intention is not evident from the Complaint, because none of Plaintiff's

10  references to product markets, aside from one reference in the antitrust Prayer for Relief,

11  are limited to the aftermarket for KitchenAid brand stand mixers.  (*See* Motion, at 9).

12         Even if the Complaint had clearly defined the relevant product market as

13  aftermarket attachments for KitchenAid brand stand mixers, such a market would not be

14  cognizable based on the facts alleged in the Complaint, and would be subject to dismissal

15  pursuant to Rule 12(b)(6). In *Kodak*, the Supreme Court held that, in certain

16  circumstances, antitrust plaintiffs may limit the relevant market to the aftermarket for a

17  single brand of product.  *See Eastman Kodak Co. v. Image Technical Services, Inc.*, 504

18  U.S. 451, 466-77 (1992).  But *Kodak* is nowhere near as broad in scope as Plaintiff

19  implies.  Indeed, as explained by this Court, the relevant market may only be limited to

20  aftermarket products for a single brand of product in "very limited circumstances."

21  *Universal Avionics Sys. v. Rockwell Intern.*, 184 F. Supp. 2d 947, 954 (D. Ariz. 2001),

22  *aff'd*, 52 Fed. Appx. 897 (9th Cir. 2002); *see also SMS Systems Maintenance Services,*

23  *Inc. v. Digital Equipment Corp.*, 188 F.3d 11, 15-16 (1st Cir. 1999) (explaining that

24  *Kodak*-type cases in which a plaintiff is allowed to limit the relevant product market to

25  aftermarket products for a single brand of product are "sui generis").  As just one

26  example of Kodak's limited scope, for a relevant market to be limited for antitrust

27  purposes to the aftermarket for a single brand of product, the alleged monopolist must

28  have changed one of its policies after some customers have already purchased a product

4

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1  in the primary market, "locking-in" those customers to the primary market.  *See PSI*

2  *Repair Services, Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820-21 (6th Cir. 1997), *quoted in*

3  *Universal Avionics Systems Corp.*, 184 F. Supp. 2d at 957-58.  Importantly, this change

4  in policy must allow the alleged monopolist to exploit these locked-in customers through

5  imposition of supracompetitive prices.  *Id.*   Additionally, as held by this Court:

6       The following four factors must *all* be satisfied in order to conclude that a
        *Kodak* lock-in market exists:

7

8       1.  High "switching costs": A substantial number of customers must have
            made brand-specific investments that still have a useful life but that are
            substantially unrecoverable if they shift to other brands;

9

10      2.  High "information costs": A substantial number of those customers must
            be too ignorant of "lifecycle" prices to protect themselves by judicious
            interbrand comparisons or by contract before they become locked in;

11

12      3.  Ability to exploit ignorant customers: The knowledgeable customers who
            can protect themselves must either be unimportant to the defendant or be
            protected by effective price discrimination from above market prices paid
13          by the ignorant; and

14      4.  Ability to exploit must be "substantial": The defendant's resulting ability
            to exploit the ignorant must be "substantial."

15

16  *Universal Avionics Systems Corp.*, 184 F.Supp.2d at 955 (citing *Kodak*, 504 U.S. at 467-

17  73 and X Areeda, et al., Antitrust Law ¶ 1740, at 138 (1996)).  Thus, to survive a motion

18  to dismiss, Plaintiff must allege a change in policy locking in consumers, and facts

19  supporting each of the above four factors.  *See Strawflower Elec., Inc. v. Radioshack*

20  *Corp.*, 2005 WL 2290314, at 9-10 (N.D. Cal. 2005) (granting defendant's motion to

21  dismiss plaintiff's *Kodak*-based antitrust claims because plaintiff failed to allege "that the

22  challenged activity affected a substantial portion of the relevant market").

23        Here, Plaintiff has not alleged any change in KitchenAid's policy, much less a

24  change in policy that might "lock-in" customers and allow KitchenAid to impose

25  supracompetitive prices for any product.  Also, Plaintiff has not plausibly alleged that any

26  of the above four factors are present (or even alleged facts relating to any of the above

27  four factors).  Thus, the "very limited circumstances" in which a court will allow a

28  plaintiff to limit the relevant market to the aftermarket for a particular brand of product

    are not present in this case -- and, KitchenAid respectfully submits, are not even remotely



1   close to present. *Universal Avionics Systems Corp.*, 184 F. Supp. 2d at 954.

2   Accordingly, Plaintiff's newly defined product market fails as a matter of law, and

3   Plaintiff's monopolization claim must therefore be dismissed on this ground.

4          Finally, even if the *Kodak* case did allow Plaintiff to limit the relevant market to

5   the aftermarket for a single brand of product, *Kodak* does not relieve Plaintiff of the

6   obligation to meet the basic pleading requirements for a monopolization claim.  Even in

7   cases where a plaintiff argues that the relevant product market should be limited pursuant

8   to *Kodak*, a monopolization claim will be dismissed if the complaint fails to allege basic

9   facts supporting the relevant aftermarket, such as the products included in the

10  aftermarket, the interchangeability of such products, or the existence of competitors in the

11  aftermarket.  *See, e.g., Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436,

12  440 (3d Cir. 1997) (affirming dismissal of plaintiff's monopolization claim for failure to

13  sufficiently allege facts supporting the interchangeability of products in the proposed

14  aftermarket in case where plaintiff relied upon *Kodak* to define the relevant market;

15  "Where the plaintiff fails to define its proposed relevant market with reference to the rule

16  of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed

17  relevant market that clearly does not encompass all interchangeable substitute products

18  even when all factual inferences are granted in plaintiff's favor, the relevant market is

19  legally insufficient and a motion to dismiss may be granted.").  Plaintiff fails to allege

20  who competes in the relevant aftermarket, which products constitute the "aftermarket

21  attachment market" for KitchenAid stand mixers, or allege any facts making it plausible

22  that all attachments for KitchenAid stand mixers (which include attachments with various

23  functions such as the meat grinder, citrus juicer, and stand mixer cover) are

24  interchangeable and part of the same relevant aftermarket as Plaintiff's bowl scraping

25  attachment product.

26         Similarly, a monopolization complaint, even if based on a *Kodak* aftermarket

27  theory, must allege anticompetitive conduct causing injury to competition in the

28  aftermarket, and not merely injury to the plaintiff.  *See, e.g., John Doe 1 v. Abbott*

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

*Laboratories*, 571 F.3d 930, 934-35 (9th Cir. 2009) (dismissing plaintiff's

monopolization claim for failure to adequately allege anticompetitive conduct in case

where plaintiff relied upon *Kodak* to define the relevant market); *Port Dock & Stone

Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 127 (2d Cir. 2007) (same).  Thus,

Plaintiff's failure to sufficiently allege anticompetitive conduct or injury to competition

constitutes another independent ground for dismissal of the monopolization claim.

### D.   Plaintiff Cannot Limit the Relevant Market to the Retail Market.

In addition to revealing its intention to try to limit the relevant market to

aftermarket attachments for a single brand (KitchenAid) of stand mixers, Plaintiff's

Response implies that it intends to further limit the relevant market to "the retail market"

for these products.  On the third page of Plaintiff's Response, Plaintiff states:

"KitchenAid has used its market power to exclude POURfect from *the retail market* for

aftermarket attachments for KitchenAid stand mixers in the United States.[2]" (Response,

at 3) (emphasis added).  Plaintiff may not limit the relevant product market to "the retail

market" for a particular product.  The relevant market for antitrust purposes includes a

relevant geographic market and a relevant product market.  *Tanaka v. University of

Southern Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (quoting *Oltz v. St. Peter's Cmty.

Hosp.,* 861 F.2d 1440, 1446 (9th Cir. 1988)).  The relevant market for antitrust purposes

does not include *a particular method of selling* a particular product in a particular

geographic region, and Plaintiff cites no authority for such a proposition.

For all of the foregoing reasons, Plaintiff's monopolization claim should be

dismissed.

---

[2] In its Response, Plaintiff also attempts to narrow the relevant geographic market from
"the United States and other countries" (*see* Compl. ¶ 7) to simply "the United States."
Plaintiff cannot amend its Complaint through its Response.  As explained in
KitchenAid's Motion, "the United States and other countries" is not a cognizable
geographic market for antitrust purposes, and this provides yet another basis for
dismissing Plaintiff's antitrust claims.  (*See* Motion, at 9).

LEWIS
AND
ROCA
— LLP —
L A W Y E R S

Case 2:09-cv-02660-GMS   Document 13   Filed 03/01/10   Page 8 of 10

1
2

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR PRODUCT DISPARAGEMENT.[3]

3
4
5
6
7
8

Plaintiff's Response does not adequately address the deficiencies in the Complaint's product disparagement allegations. First, Plaintiff's Response does not address the Complaint's failure to allege that KitchenAid made false statements, as explained in Part II.A. of KitchenAid's Motion.[4] This deficiency warrants dismissal of the product disparagement claim, without the need to reach KitchenAid's privilege defense.

9
10
11
12
13
14
15
16

Second, Plaintiff's argument that the Court cannot dismiss the product disparagement cause of action based on KitchenAid's privilege defense is unsupported by case law. The Arizona Supreme Court has held that whether a privilege exists is a question of law for the court, which may be properly raised in a motion to dismiss if the facts establishing the occasion for the privilege appear in the pleadings. *See, e.g.*, *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984); *Chamberlain v. Mathis*, 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986); *Sierra Madre Development, Inc. v. Via Entrada Townhouses Assn.,* 20 Ariz. App. 550, 514 P.2d 503 (1973).

17
18
19

Here, the facts establishing the occasion for KitchenAid's privilege defense are set forth in Plaintiff's Complaint itself. Plaintiff alleges in the Complaint that KitchenAid advised its trade customers, based on KitchenAid testing, that "'bowl-scraper accessories'

20
21
22
23

[3] The Court has discretion whether to exercise supplemental jurisdiction once all original jurisdiction claims have been dismissed. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. Cal. 2001) (citing 28 U.S.C. § 1367(c)(3)). Thus, contrary to Plaintiff's argument in its Response, this Court has the discretion to exercise its supplemental jurisdiction over Plaintiff's insufficiently pleaded state law claims, and may dismiss those claims with prejudice.

24
25
26
27
28

[4] Plaintiff's only argument responding to Part II.A. is the argument that KitchenAid's reliance on *Fillmore v. Maricopa County Water Processing Systems, Inc.*, 211 Ariz. 269, 120 P.3d 697 (App. 2005), was improper because *Fillmore* is a depublished opinion. However, in its Motion KitchenAid made clear when citing *Fillmore* that the opinion had been depublished, and did not rely on the case as controlling authority. KitchenAid simply cited *Fillmore* as an Arizona case stating the elements of a product disparagement claim (*see* Motion, at 11-12), and Plaintiff seemingly does not dispute the accuracy of these elements. Furthermore, this Court has cited *Fillmore* with approval in the same manner as did KitchenAid. *See Seitz v. Rheem Mfg. Co.*, 544 F. Supp. 2d 901, 908 (D. Ariz. 2008) (discussing the elements of a product disparagement claim and citing *Fillmore*). In any event, KitchenAid's arguments regarding the product disparagement claim are not dependent on *Fillmore's* viability.



LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

1   may shorten the life of the stand mixer motor and cause damage that would be excluded

2   from warranty coverage," and may cause motor temperatures to exceed those allowed

3   under Underwriters Laboratories' requirements. (Compl. ¶ 19). KitchenAid's

4   communications relate to the interests of consumers and were therefore privileged,

5   regardless of whether KitchenAid's tests were performed in conformance with certain

6   standards. Also, contrary to Plaintiff's argument, the Court may consider the UL

7   Standard referenced in KitchenAid's Motion without converting the Motion to a motion

8   for summary judgment. As recognized by this Court, consideration of a document

9   outside the pleadings  (here, the UL Standards) will not convert a motion to dismiss to a

10  motion for summary judgment where the plaintiff refers extensively to the document in

11  the complaint or the document forms the basis of the plaintiff's claim. *See, e.g.*,

12  *Seaboard Sur. Co. v. Grupo Mexico, S.A.B. de C.V.*, No. 06-0134, 2009 WL 4827029, at

13  5-6 (D. Ariz. Dec. 15, 2009). Here, because Plaintiff's claim is based on the allegation

14  that KitchenAid's tests did not conform to Underwriter Laboratories' standards (Compl.

15  ¶¶ 10, 19, & 27), the Court may consider the UL Standards at the motion to dismiss stage.

16  **III.   PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL
17         INTERFERENCE WITH CONTRACTUAL RELATIONS.**

18         Finally, Plaintiff's Response only dedicates a few sentences to the intentional

19  interference claim. (Response, at 6). Plaintiff flatly states that it has alleged all elements

20  of this claim, and that a complaint need not state detailed factual allegations to survive a

21  12(b)(6) motion. This is another example, however, of Plaintiff's refusal to acknowledge

22  *Twombly* and *Iqbal*. As held in *Twombly*, "a plaintiff's obligation to provide the

23  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

24  formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*

25  *v. Twombly*, 550 U.S. 544, 546 (2007). As explained in KitchenAid's Motion to Dismiss,

26  Plaintiff has provided nothing more than a formulaic recitation of the elements of the

27  intentional interference with contract claim. Thus, Plaintiff's interference with contract

28  cause of action should be dismissed.

LEWIS
AND
ROCA
LLP
L A W Y E R S

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Plaintiff is unhappy about a letter that KitchenAid sent its customers, warning them about potential problems associated with using bowl-scraping accessories with KitchenAid's stand mixers.  KitchenAid stands by that letter -- plaintiff has failed to allege any false statement within it -- but, in any event, the dispute about the letter does not give rise to a cognizable antitrust monopolization claim.  For all of the foregoing reasons, KitchenAid respectfully moves the Court to dismiss Plaintiff's Complaint, with prejudice.

DATED this 1st day of March 2010.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By:  Steven G. Morrison
     Robert H. Brunson

- and -

LEWIS AND ROCA LLP

By /s/ Randy Papetti
        Randy Papetti
        David Weinzweig
   Attorneys for Defendant KitchenAid

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2010, I electronically transmitted the attached document to the clerk of the U.S. District court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following parties:

Richard A. Segal rasegal@gustlaw.com
Gust Rosenfeld P.L.C.
Attorney for Plaintiff

/s/ Carole Hanger