**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>Defendant. | No. CV-09-2660-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss (Dkt. # 8.) For the following reasons, the Court grants Defendant's Motion to Dismiss with leave to amend.

## BACKGROUND

Defendant KitchenAid ("KitchenAid") manufactures and sells stand mixers and mixer attachments directly to consumers and through retailers. (Dkt. # 1 at 2.) Plaintiff POURfect Products ("POURfect") makes and sells an aftermarket beater attachment (the "Scrape-A-Bowl") for use with KitchenAid stand mixers. (*Id.*) In early 2009, POURfect had existing and prospective contracts with unspecified retailers to supply Scrape-A-Bowl. (*Id.*) POURfect alleges that these existing and prospective contracts would have resulted in sales of not less than $8,000,000 in 2010. (*Id.*) But, in May 2009, KitchenAid advised its trade customers (i.e., retailers) that "bowl-scraper accessories" may shorten the life of the stand mixer motor

and cause damage that would be excluded from warranty coverage. (*Id.*) KitchenAid advised its retailers that it had performed tests that showed that the use of bowl-scraper accessories caused motor temperatures to exceed those allowed under the Underwriter Laboratories' requirements. (*Id.* at 3.) The Complaint alleges, however, that KitchenAid's tests did not conform to the Underwriter Laboratories' testing requirements and did not fairly test the bowl-scraper beaters in a manner generally representative of actual service conditions. (*Id.*) Further, the Complaint alleges that the use of KitchenAid attachments caused greater motor problems than did Scrape-A-Bowl beaters under actual service conditions. (*Id.*) POURfect claims that KitchenAid's false and misleading statements to its retailers, with a specific intent to destroy competition, has caused POURfect to lose profits of an amount not less than $6,000,000. (*Id.* at 4.)

Count One of POURfect's Complaint alleges that KitchenAid violated Section 2 of the Sherman Act (15 U.S.C. § 2). It seeks both injunctive relief and treble damages as authorized by Section 4 of the Clayton Act (15 U.S.C. § 15). (*Id.*) Counts Two and Three allege state law claims based on product disparagement and interference with contractual relations. (*Id.*)

## LEGAL STANDARD FOR MOTION TO DISMISS

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant

has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## DISCUSSION

### I. The Court Grants KitchenAid's Motion to Dismiss

POURfect's Complaint fails to plead facts sufficient to make any of its federal claims plausible.

#### A. POURfect Fails to State a Plausible Claim For Relief Under Section 2 of the Sherman Act For Actual Monopolization.

To show actual monopolization under § 2 of the Sherman Act, a Plaintiff must show "(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). The first prong can be broken down into two parts: (1) whether the defendant possessed monopoly power (2) in a properly defined relevant market. The Supreme Court has clarified that the second *Grinnell* factor applies only where the defendant engaged in "anticompetitive conduct." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). In addition to the above elements, a plaintiff who, as here, seeks damages under Section 4 of the Clayton Act must allege "causal antitrust injury," indicating that the plaintiff's "loss flows from an anticompetitive aspect or effect of the defendant's behavior." *Rebel Oil Co., Inc., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). The Complaint fails to allege facts sufficient to support any of these elements.

      **i.    POURfect's Complaint Fails To Allege Plausible Facts With Sufficient Detail To Show That KitchenAid Possesses Monopoly Power.**

"Monopoly power, for the purpose of section 2 of the Sherman Act, is "'the power to control prices or exclude competition.'" *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (quoting *Grinnell*, 384 U.S. at 571). "A plaintiff may demonstrate market power either by direct evidence or by circumstantial evidence." *Forsyth*, 114 F.3d at 1475 (citing *Rebel Oil*, 51 F.3d at 1434). "Direct proof of market power may be shown by evidence of restricted output and supracompetitive prices." *Forsyth*, 114 F.3d at 1475. Here, POURfect has not alleged any facts showing direct proof of market power.

Meanwhile, "[c]ircumstantial evidence . . . requires the plaintiff to: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* at 1476 (internal quotations omitted). POURfect fails to allege facts sufficient to meet any of these elements. First, as discussed *infra* Section I-A-ii, POURfect does not allege facts defining the relevant market. Furthermore, POURfect does not allege facts showing that the defendant owns a dominant share of the market, that there are significant barriers to entry into the relevant market, or that existing competitors lack the capacity to increase their output in the short run. Instead, POURfect makes only a conclusory allegation regarding monopoly power, stating, "By virtue of its influence over its trade customers at the retail level of the market, KitchenAid possessed monopoly power in the relevant market of aftermarket attachments." (Dkt. # 1 at 3.) This type of "formulaic recitation of the elements of a cause of action" is insufficient under the *Twombly* pleading requirements. 550 U.S. at 555; *see also Korea Kumho Petrochem. v. Flexsys America LP*, 2008 WL 686834, at *9 (N.D. Cal. March 8, 2008) (dismissing plaintiff's attempted monopolization claim because the complaint made only a blanket allegation that the defendants had a dangerous probability of achieving monopoly power).

- 4 -

### ii. POURfect's Complaint Fails To Allege a Relevant Market.

"Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). The "relevant market" includes both the relevant geographic market, as well as the relevant product market, including "product use, quality, and description." *Id.* (internal quotation omitted).

First, the Complaint does not sufficiently allege the geographic market. "The geographic market extends to the area of effective competition . . . where buyers can turn for alternative sources of supply." *Tanaka*, 252 F.3d at 1063 (internal quotation omitted). Only one paragraph of the Complaint refers to the geographic market, alleging that "KitchenAid has market power to exclude competition in the aftermarket for stand mixer attachments in the United States and other countries." (Dkt. # 1 at 2.) This statement, by not alleging *which* other countries or which parts of the United States are included in the geographic market, fails to set the parameters for a relevant geographic market necessary to survive a Rule 12(b)(6) motion.

In addition to the geographic market, the Complaint fails to allege sufficient facts relating to the relevant product market. In general, a product market is "the pool of goods or services that qualify as economic substitutes because they enjoy reasonable interchangeability of use and cross-elasticity of demand[,]" although "[i]n limited settings . . . the relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity to account for identifiable submarkets or product clusters." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). In other words, a product market typically exists where a group of products may be used interchangeably and where an increase in the price of one good causes a corresponding increase in the demand for other goods.

A single brand of product, such as attachments for a single brand of product, may constitute the relevant product market in limited circumstances. *Univ. Avionics Sys. Corp. v. Rockwell Int'l Corp.*, 184 F. Supp. 2d 947, 954 (D. Ariz. 2001). POURfect's Response urges the Court to define the relevant product market as only aftermarket products for

KitchenAid stand mixers. (Dkt. # 12 at 3.) While under certain conditions, a plaintiff may limit the relevant market to the aftermarket for a single brand of product, the rule is not as broad as POURfect implies. The relevant product market may be limited to the aftermarket for a single brand of product only in "very limited circumstances." *Univ. Avionics*, 184 F. Supp. 2d at 954. The very limited circumstances will occur when "'switching costs,' 'information costs,' and a 'lock-in' [] create a potential for aftermarket power in the derivative aftermarkets for the manufacturer's own equipment[,]" such as where a manufacturer markets its own equipment and subsequently changes its policies to "lock-in" existing customers. *Id.* (citing *Kodak*, 504 U.S. at 477); *see also PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997). Specifically, for such a lock-in to occur, the Complaint must allege facts making the following four factors plausible:

    1. High "switching costs": A substantial number of customers must have made brand-specific investments that still have a useful life but that are substantially unrecoverable if they shift to other brands;
    2. High "information costs": A substantial number of those customers must be too ignorant of "lifecycle" prices to protect themselves by judicious interbrand comparisons or by contract before they become locked in;
    3. Ability to exploit ignorant customers: The knowledgeable customers who can protect themselves must either be unimportant to the defendant or be protected by effective price discrimination from above market prices paid by the ignorant; and
    4. Ability to exploit must be "substantial": The defendant's resulting ability to exploit the ignorant must be "substantial."

*Univ. Avionics*, 184 F. Supp. 2d at 955 (citing *Kodak*, 504 U.S. at 467-73; X Areeda et al., Antitrust Law ¶ 1740 at 138 (1996)). Here, POURfect fails to allege a KitchenAid policy shift that would "lock-in" customers. An unfavorable report regarding POURfect's attachment does not, of itself, constitute a change in policy that would require the owners of KitchenAid mixers to purchase only KitchenAid aftermarket attachments. Moreover, POURfect has not plausibly alleged facts that would make any of the above four factors plausible. Therefore, the "very limited circumstances" in which courts may limit the relevant product market to the aftermarket for a single brand of product does not apply to this case.[1]

---

[1] The Complaint also fails to allege a relevant market that extends beyond the KitchenAid attachment aftermarket. "'Where the plaintiff fails to define its proposed relevant

- 6 -

### iii. POURfect's Complaint Fails To Allege Plausible Facts Indicating That KitchenAid Engaged In Anticompetitive Conduct.

An act is deemed *anticompetitive* under the Sherman Act only when it harms both the overall efficiency in the market and either raises the prices of goods or diminishes their quality. *Rebel Oil*, 51 F.3d at 1433. Here, POURfect's Complaint does not properly allege anticompetitive conduct because it fails to allege facts showing that KitchenAid's conduct either raised prices or diminished quality.

POURfect alleges that KitchenAid disparaged POURfect's product to trade customers. The Ninth Circuit, however, has held that "[w]hile the disparagement of a rival or compromising a rival's employee may be unethical and even impair the opportunities of a rival, its harmful effects on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act." *Am. Prof'l Testing Servs., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). The Ninth Circuit requires a "'preliminary showing of significant and more-than-temporary harmful effects on *competition* (and not merely upon a competitor or customer)' before [disparaging comments about a rival's product] can rise to the level of [anticompetitive] conduct." *Id.* (quoting 3 P. Areeda & D. Turner, *Antitrust Law* ¶ 737b at 278 (1978)).

---

market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.'" *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N. D. Cal. 2008) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997)). Here, POURfect has failed to allege any facts indicating that the Scrape-a-Bowl is interchangeable with either the KitchenAid brand or other similar products on the market, nor has POURfect alleged facts regarding how the prices of some aftermarket attachments affect the demand for other attachments. Therefore, POURfect's Complaint does not survive a Rule 12(b)(6) motion. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (affirming dismissal of plaintiff's antitrust complaint where plaintiff failed to allege "that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within this geographic market").

Specifically, *Am. Prof'l Testing* laid out six elements that a plaintiff making an antitrust claim based on disparaging comments must affirmatively allege through specific facts in order to overcome the presumption that defendant's disparaging comments had only a "de minimus" effect on competition. *Id.* at 1152. Plaintiff must allege facts showing that Defendant's comments about the Scrape-a-Bowl were "'(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals.'" *Id.* at 1152 (quoting *Nat'l Ass'n of Pharm. Mfrs. v. Ayerest Labs.*, 850 F.2d 904, 916 (2d Cir. 1988)).

POURfect has not alleged that KitchenAid caused significant and more-than-temporary harmful effects on competition generally (as opposed to alleging harmful effects merely on itself). *See LiveUniverse, Inc. v. MySpace, Inc.*, 2007 WL 6865852, at *11 (C.D. Cal. June 5, 2007) (granting a Rule 12(b)(6) motion for failure to allege anticompetitive conduct and explaining that "'[t]o be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect[,]'" meaning that it "'must harm the competitive process and thereby harm consumers[,]'" but mere "'harm to one or more competitors will not suffice'") (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)), *aff'd*, 304 F. App'x 554 (9th Cir. 2008).

Nor has POURfect sufficiently pleaded facts constituting the fifth element that the disparagement "continued for prolonged periods" because the Complaint alleges only that KitchenAid made disparaging comments to its trade customers in May 2009. POURfect also does not plead the sixth element that the comments were "not readily susceptible of neutralization or other offset by rivals." For example, POURfect has not stated in its Complaint why it would be unable to communicate statements about its product quality to KitchenAid retailers, thus offsetting the effect of KitchenAid's allegedly faulty tests. *See, e.g.*, *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002) (dismissing claims where plaintiff did not allege that the violations were not readily susceptible to

neutralization or offsets by rivals). Therefore, POURfect has not properly alleged anticompetitive conduct.

### iv. POURfect's Complaint Fails To Allege With Sufficient Detail That Show KitchenAid Has Caused Antitrust Injury.

Because POURfect seeks damages under Section 4 of the Clayton Act for violation of Section 2 of the Sherman Act, POURfect must allege "causal antitrust injury," indicating that its "loss flows from an anticompetitive aspect or effect of the defendant's behavior." *Rebel Oil*, 51 F.3d at 1433. The Ninth Circuit has identified four requirements for antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir.1999). Here, the Complaint does not allege any injury to competition or consumer welfare. Rather, POURfect alleges only harm to itself. Harm to a competitor, however, without harm either to competition or to consumer welfare, is not sufficient to establish antitrust injury. *See LiveUniverse, Inc.*, 2007 WL 6865852, at *15 (granting defendant's Rule 12(b)(6) motion and stating that "[h]arm to one or more competitors is not sufficient to constitute antitrust injury unless a plaintiff alleges harm to the competitive process, which in turn harms consumers").[2]

## II. The Court Declines To Exercise Pendant Jurisdiction.

When a district court "dismisses [federal claims] leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them

---

[2] To the extent POURfect alleges *attempted* monopolization under Section 2 of the Sherman Act, that claim also fails because an attempted monopolization claim also requires a plaintiff to allege predatory or anticompetitive conduct and causal antitrust injury, which, as discussed above, POURfect has not done. *See Rebel Oil Co.*, 51 F.3d at 1433 (stating that an attempted monopolization claim includes four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury").

without prejudice." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). Only in the "unusual case" should federal courts retain jurisdiction over the state law claims. *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994). In this determination, courts consider "economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This is not an unusual case, and it is appropriate to dismiss the state law claims without prejudice to allow state courts to decide state law. Moreover, economy, convenience, and fairness all favor remand because this case is only at the motion-to-dismiss stage, so presumably the parties have not yet conducted substantial discovery.[3]

### III. Dismissal Is Without Prejudice.

Federal Rule of Civil Procedure 15(a) "declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)). The Court finds that amendment may cure some of the Complaint's defects.

### CONCLUSION

POURfect's Complaint does not set forth sufficient facts to state a claim for a Sherman Act violation.

**IT IS THEREFORE ORDERED** that KitchenAid's Motion to Dismiss (Dkt. # 8) is **GRANTED** with leave to file an amended complaint on or before **May 14, 2010** at **5:00 p.m.**

/ / /

/ / /

/ / /

/ / /

---

[3] Although the Court does not address the state law claims, a cursory reading of the Complaint indicates that the state law claims may also suffer from insufficient pleading requirements under *Twombly* and *Iqbal*.

1 **IT IS FURTHER ORDERED** that If no amended complaint is filed by that date, the Clerk of the Court is directed to **terminate** this action.

DATED this 3rd day of May, 2010.

_____
G. Murray Snow
United States District Judge