LEWIS AND ROCA LLP
LAWYERS

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Randy Papetti, State Bar No. 014586
Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
EMail: RPapetti@LRLaw.com
David Weinzweig, State Bar No. 018687
Direct Dial: 602 262-5358
Direct Fax: 602 734-3883
EMail: David_Weinzweig@LRLaw.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main St., 17th Floor
Columbia, SC 29201
(803) 255-9410

Stephen G. Morrison (Pro Hac Vice)
E-Mail: Steve.Morrison@nelsonmullins.com
Robert H. Brunson (Pro Hac Vice)
E-Mail: Robert.Brunson@nelsonmullins.com

Attorneys for Defendant KitchenAid

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

POURfect Products, a division of DYCE LLC, an Arizona limited liability company,

Plaintiff,

vs.

KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,

Defendant.

No. CV 2009-02660-PHX-GMS

**DEFENDANT KIITCHENAID'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

On December 22, 2009, Plaintiff POURfect Products, a division of DYCE LLC ("Plaintiff") filed a complaint ("Complaint") against Defendant KitchenAid, a division of Whirlpool Corporation ("KitchenAid"). The Complaint included a federal antitrust cause of action under Section 2 of the Sherman Act and two state law causes of action. On May 3, 2010, the Court filed an order ("Order") granting KitchenAid's motion to dismiss Plaintiff's Complaint in its entirety. In its Order, the Court dismissed Plaintiff's antitrust cause of action based on various pleading deficiencies, and the Court declined to exercise pendant jurisdiction over Plaintiff's two state law causes of action. Because the Court dismissed Plaintiff's Complaint without prejudice, Plaintiff was allowed to file an amended complaint, which it filed on May 13, 2010 ("Amended Complaint").



KitchenAid hereby moves to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's minor revisions to the original Complaint do not cure the numerous deficiencies identified by the Court in its Order. In many cases, the Amended Complaint does not allege a single additional fact relevant to a specific deficiency identified in the Court's Order. Plaintiff's antitrust cause of action in its original Complaint failed, not because Plaintiff omitted a few additional details, but because Plaintiff's Complaint was based on a simple commercial dispute, not a violation of federal antitrust law. Plaintiff's antitrust cause of action in its Amended Complaint is based on the same simple commercial dispute, and it should be dismissed for the same reasons. Further, the state law claims, which are essentially unchanged from the original Complaint, also fail at the pleading stage to state sufficient facts to support a claim for relief. Accordingly, this matter should be dismissed in its entirety or, in the alternative, the Court should again decline to exercise pendant jurisdiction over the state law claims.

## INTRODUCTION

The Amended Complaint alleges the same three causes of action alleged in the Complaint. For the most part, the Amended Complaint also alleges the same facts alleged in the Complaint. As was the case with the Complaint, the Amended Complaint arises from a letter that KitchenAid sent to certain retailers in May 2009. (Am. Compl. ¶¶ 11, 22, 30). The Amended Complaint does not allege any additional conduct, beyond sending the May 2009 letter, on the part of KitchenAid. (*See generally id.*).

While KitchenAid will not repeat the summary of facts provided in the Introduction section to its Motion to Dismiss the Complaint (Dkt. # 8 at 2-3), KitchenAid will identify the additional facts that appear in the Amended Complaint but did not appear in the Complaint. First, the Amended Complaint refers to KitchenAid's stand mixers as "planetary stand mixers" ("PSMs"). (*Id.* ¶ 5). The Amended Complaint alleges that KitchenAid sells approximately 80% of the PSMs in the United States, and approximately 90% of "replacement beaters for KitchenAid PSMs." (*Id.* ¶ 7). The

Amended Complaint alleges that KitchenAid has market power to exclude competition in the aftermarket for KitchenAid PSM attachments in "all states of the United States," whereas the Complaint alleged market power in "the United States and other countries." (*Compare id.* ¶ 7 *and* Compl. ¶ 7). Last, the Amended Complaint identifies four retailers with whom Plaintiff allegedly had existing and prospective contracts in early 2009 to supply Scrape-A-Bowl beaters, and to whom KitchenAid allegedly sent its May 2009 letter: Williams-Sonoma, Bed, Bath and Beyond, Kohl's, and Macy's. (Am. Compl. ¶¶ 10-11).

In addition to these new alleged facts, the Amended Complaint makes new allegations regarding the effects of KitchenAid's May 2009 letter to retailers. Specifically, the Amended Complaint alleges that the May 2009 letter was intended "to exclude POURfect from the retail market for KitchenAid PSM attachments" and "eliminated or restricted the ability of KitchenAid PSM owners to buy aftermarket attachments." (*Id.* ¶ 12). The Amended Complaint also alleges that "KitchenAid's false advice has persisted and has resulted in continuously depriving KitchenAid PSM owners of access to POURfect's Scrape-A-Bowl beaters through established retail outlets"; that KitchenAid's statements regarding Plaintiff's products were clearly false and that actual experience confirms that the use of Scrape-A-Bowl beaters is not harmful to KitchenAid PSMs; that the statements are clearly material to a KitchenAid PSM owner or retailer; that the statements are clearly likely to induce reasonable reliance by retailers and have done so; that "[t]he statements were made to retailers who are without knowledge of the technical aspects of KitchenAid's misrepresentations"; and that "POURfect is without practical means to neutralize KitchenAid's false statements by convincing the retailers to disregard them." (*Id.* ¶ 14).

Finally, Plaintiff alleges that KitchenAid's "market power is based on KitchenAid's relationships with retailers and its ability to affect supplies and prices, all with respect to a product – the KitchenAid PSM – that is popular with consumers," and that "[e]ntrenched buyer preferences for the KitchenAid PSM and the high cost of



establishing new retail outlets are barriers to POURfect's entry into the aftermarket for KitchenAid PSM attachments in the United States." (*Id.* ¶¶ 8, 16).

The three short paragraphs above identify every change from the Complaint to the Amended Complaint. These changes are small in both volume and significance, and these changes certainly do not cure all of the deficiencies identified in the Court's Order. Significantly, the Amended Complaint fails to clarify the relevant product market for antitrust purposes, much less allege facts making its relevant product market plausible. The Amended Complaint does not allege how many retailers are still selling Plaintiff's product, or that Plaintiff lacks alternative means to distribute its products, such as through Internet sellers (e.g., Amazon.com) or through Plaintiff's own website. Nor does Plaintiff allege that it – or any other makers of "bowl-scraper accessories" (or other accessories) – are unable to compete as a result of KitchenAid's alleged conduct. Rather, Plaintiff alleges only that it lost sales to four retailers.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR MONOPOLIZATION.

The antitrust claims in the Amended Complaint remain deficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for most of the same reasons set forth in the Order. Specifically, the Amended Complaint fails to state sufficient facts to support a claim for violations of section 2 of the Sherman Act because:

**1.** It does not define the product market and further fails to allege facts that would support a relevant market allegation;

**2.** It fails to allege facts, through either direct or circumstantial proof, supporting an allegation that KitchenAid has market power in any relevant market; and

**3.** It fails to allege facts required to state a claim that the May 2009 letter is the type of disparaging comment that constitutes anticompetitive conduct under the antitrust laws.

For these reasons and because it is now apparent Plaintiff cannot allege facts to state a monopolization claim, the Court should dismiss the Amended Complaint without further leave to amend.



**A. The Amended Complaint Fails To Allege a Relevant Market.**

"Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1105 (9th Cir. 1999)). Plaintiff fails to meet this threshold requirement, even in its Amended Complaint. In its Order, the Court was forced to look – not to the Complaint – but to Plaintiff's Response to KitchenAid's Motion to Dismiss to determine that the alleged relevant product market was "aftermarket attachments for KitchenAid stand mixers." (*See* Dkt. #15 at 5-6 (citing Dkt. #12 at 3)). In its Amended Complaint, Plaintiff again mentions several categories of products without specifying the relevant product market. Plaintiff mentions "replacement attachments for [KitchenAid's] PSMs" in paragraph 6, "replacement beaters for KitchenAid PSMs" in paragraph 7, "the relevant market of aftermarket attachments" generally (without mention of KitchenAid brand PSMs, the word "replacement," or the word "beater") in paragraph 13, and finally, "aftermarket beater attachments for KitchenAid planetary stand mixers" in paragraph 3 of the antitrust "Prayer for Relief." In addition, Plaintiff mentions the "dough hook, grain mill, meat grinder and ice cream maker" in paragraph 11 of its Amended Complaint, but Plaintiff does not clarify whether these products are part of the relevant product market.

Even after having the opportunity to replead, Plaintiff still does not identify what products are included in the alleged relevant product market. Does the "market" consist of "beaters," "replacement beaters," "aftermarket beater attachments" or "bowl scraper" beaters? If the "market" includes other types of attachments, which types are included? Without answers to these basic questions, plaintiff cannot establish any of the elements of a monopolization claim.

Accordingly, the Court should dismiss the Amended Complaint. *See, e.g.*, *Audo Car Stereo, Inc. v. Little Guys, Inc.*, No. 04 C 3562, 2004 WL 3019298, at *7 (N.D. Ill. Dec. 28, 2004) (dismissing antitrust complaint where plaintiff referenced different categories of products without specifying which category was the relevant market).



Further, the Amended Complaint fails to take the additional but equally necessary step of alleging facts making a defined relevant product market plausible. In its Order, the Court stated:

> "'Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.'" *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N. D. Cal. 2008) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997)). Here, POURfect has failed to allege any facts indicating that the Scrape-a-Bowl is interchangeable with either the KitchenAid brand or other similar products on the market, nor has POURfect alleged facts regarding how the prices of some aftermarket attachments affect the demand for other attachments. Therefore, POURfect's Complaint does not survive a Rule 12(b)(6) motion. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (affirming dismissal of plaintiff's antitrust complaint where plaintiff failed to allege "that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within this geographic market").

(Dkt. # 15 at 7 n.1). Plaintiff has not alleged one additional fact in its Amended Complaint to overcome this deficiency. The Amended Complaint does not include any discussion of interchangeability of products, cross-elasticity of demand, or price in general.[1] Plaintiff also does not clarify whether any other company – aside from Plaintiff and KitchenAid – manufactures products in the relevant market. For this additional reason, Plaintiff's antitrust cause of action should be dismissed.

Finally, assuming Plaintiff intends to allege a relevant product market of aftermarket attachments (or some subset of aftermarket attachments) for KitchenAid brand PSMs, Plaintiff has not alleged facts establishing the "very limited circumstances" in which the relevant market may be limited to an aftermarket product for a single brand of product. As explained in the Court's Order, the very limited circumstances only occur when "'switching costs,' 'information costs,' and a 'lock-in' [] create a potential for aftermarket power in the derivative aftermarkets for the manufacturer's own

[1] Based on Plaintiff's vague allegations about various "markets" that may include such disparate products as bowl scrapers, meat grinders and ice cream makers, it does not seem plausible that product interchangeability exists. Similarly, it does not seem plausible based on these allegations that prices of some aftermarket attachments would affect demand for others which have an entirely different purpose.

equipment[,]" such as where a manufacturer markets its own equipment and subsequently changes its policies to "lock-in" existing customers. (Dkt. # 15 at 6 (citing *Univ. Avionics Sys. Corp. v. Rockwell Int'l Corp.*, 184 F. Supp. 2d 947, 954 (D. Ariz. 2001) and *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997)). For such a lock-in to occur, the complaint must allege facts making four factors plausible:

> 1. High "switching costs": A substantial number of customers must have made brand-specific investments that still have a useful life but that are substantially unrecoverable if they shift to other brands;
>
> 2. High "information costs": A substantial number of those customers must be too ignorant of "lifecycle" prices to protect themselves by judicious interbrand comparisons or by contract before they become locked in;
>
> 3. Ability to exploit ignorant customers: The knowledgeable customers who can protect themselves must either be unimportant to the defendant or be protected by effective price discrimination from above market prices paid by the ignorant; and
>
> 4. Ability to exploit must be "substantial": The defendant's resulting ability to exploit the ignorant must be "substantial."

(*Id.* (citing *Univ. Avionics*, 184 F. Supp. 2d at 955)). In applying this law to Plaintiff's Complaint, the Court held:

> Here, POURfect fails to allege a KitchenAid policy shift that would "lock-in" customers. An unfavorable report regarding POURfect's attachment does not, of itself, constitute a change in policy that would require the owners of KitchenAid mixers to purchase only KitchenAid aftermarket attachments. Moreover, POURfect has not plausibly alleged facts that would make any of the above four factors plausible. Therefore, the "very limited circumstances" in which courts may limit the relevant product market to the aftermarket for a single brand of product does not apply to this case.

(Dkt. # 15 at 6). Plaintiff's suit against KitchenAid is based on the "unfavorable report regarding POURfect's attachment" from May 2009. This fact has not changed from the original Complaint to the Amended Complaint. As was the case with the original Complaint, the Amended Complaint does not allege a change in policy, nor does it allege facts which even relate to the four factors cited above. Accordingly, the Amended Complaint fails to allege a valid relevant market, and Plaintiff's antitrust cause of action should be dismissed.



**B. The Amended Complaint Fails to Allege Plausible Facts With Sufficient Detail to Show That KitchenAid Possesses Monopoly Power.**

Even if Plaintiff had defined a relevant product market and alleged facts making such product market plausible, the Amended Complaint should be dismissed for failure to allege facts plausibly supporting its assertion that "KitchenAid has market power to exclude competition in the aftermarket for KitchenAid PSM attachments in all states of the United States." (Am. Compl. ¶ 7). A plaintiff may demonstrate monopoly power through direct or circumstantial evidence. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997). Direct proof requires evidence of restricted output and supracompetitive prices. *Id.* Circumstantial proof requires the plaintiff to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* at 1476.

Here, the Amended Complaint does not establish monopoly power through direct proof, as it does not allege supracompetitive prices (or facts relating to price at all). The Amended Complaint also fails to allege facts supporting any of the three elements required for circumstantial proof. As explained *supra* Section I.A., the Amended Complaint fails to define the relevant market. Also, the Amended Complaint's only allegation related to market share is the allegation that KitchenAid "sells approximately 80% of the PSMs in the United States, and approximately 90% of replacement beaters for KitchenAid PSMs." (Am. Compl. ¶ 7). The Amended Complaint does not, however, allege KitchenAid's percentage share of the market over which KitchenAid allegedly has market power – "the aftermarket for KitchenAid PSM attachments." (*Id.*).

With regard to the third element of circumstantial proof, the only allegation relating to barriers to entry is paragraph 16, which states: "Entrenched buyer preferences for the KitchenAid PSM and the high cost of establishing new retail outlets are barriers to POURfect's entry into the aftermarket for KitchenAid PSM attachments in the United States." (*Id.* ¶ 16). First, a potential entrant to the *aftermarket* for KitchenAid PSMs



would benefit from "entrenched buyer preferences for the KitchenAid PSM." Every purchaser of a KitchenAid PSM is a potential purchaser of an aftermarket attachment for a KitchenAid PSM. Second, Plaintiff's implication that a company needs to establish a new retail outlet to enter the aftermarket for KitchenAid PSMs is implausible. In support of this implication, Plaintiff has only identified four retailers in the entire United States marketplace to whom it allegedly has been unable to sell its "Scrape-A-Bowl" – a product that represents one of many types of aftermarket attachments for KitchenAid PSMs. Plaintiff has not alleged that it cannot sell its "Scrape-A-Bowl" through other retailers, or through its website, or that Plaintiff cannot sell another type of aftermarket attachment for KitchenAid PSMs, or that any other competitor has been unable to sell products in the market. In sum, alleging that KitchenAid wrote a letter in May 2009 to certain retailers regarding "bowl-scraping accessories" for KitchenAid PSMs does not make it plausible that "significant barriers to entry" exist to entering the much broader aftermarket for all KitchenAid PSM attachments in the United States. Finally, Plaintiff has not alleged that any other competitors exist in the relevant market, nor has Plaintiff alleged that, if such competitors existed, they lack the capacity to increase their output in the short-run.

Because the Amended Complaint fails to allege facts supporting market power in the relevant market, through either direct or circumstantial proof, Plaintiff's antitrust cause of action should be dismissed.

**C. The Amended Complaint Fails to Allege Plausible Facts Indicating That KitchenAid Engaged in Anticompetitive Conduct.**

Finally, the conduct allegedly taken by KitchenAid – i.e., sending a letter to certain retailers in May 2009 disparaging "bowl-scraping accessories" for KitchenAid PSMs – does not constitute anticompetitive conduct for purposes of the Sherman Act. First, Plaintiff failed to correct the Court's finding in the Order that "POURfect has not alleged that KitchenAid caused significant and more-than-temporary harmful effects on competition generally (as opposed to alleging harmful effects merely on itself)." (Dkt. #



15 at 9) (citing *LiveUniverse, Inc. v. MySpace, Inc.*, 2007 WL 6865852, at *11 (C.D. Cal. June 5, 2007)). The Amended Complaint alleges that, as a result of KitchenAid's conduct, Plaintiff lost profits of $6,000,000 (Am. Compl. ¶ 15) and lost the ability to sell one of its products to four retailers (*id.* ¶ 11), but it alleges no facts supporting significant and more-than-temporary harmful effects on competition generally. Second, the Amended Complaint does not allege any facts relating to the efficiency of any market, increased prices for any products, or the diminished quality of any products. Such allegations would be necessary to state a claim because an act is only deemed "anticompetitive" for purposes of the Sherman Act when it harms the overall efficiency in the market, *and* it either raises the prices of goods or diminishes their quality. *Rebel Oil Co., Inc., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (*cited in* Dkt. #15 at 7).

Last, the Amended Complaint does not cure the failure of the original Complaint to allege specific facts required in the Ninth Circuit to state an antitrust claim based on alleged disparaging comments made about a product. In its Order, the Court held that the Complaint failed to allege facts supporting the fifth or sixth elements from *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147 (9th Cir. 1997).[2] (Dkt. # 15 at 8). The Court held that Plaintiff failed to allege facts supporting the fifth element because the "Complaint alleges only that KitchenAid made disparaging comments to its trade customers in May 2009." (*Id.*). This was not deemed sufficient to allege that the comments "continued for prolonged periods." *Am. Prof'l Testing*, 108 F.3d at 1152. The Amended Complaint again only alleges that KitchenAid made disparaging comments in the May 2009 letter (Am. Compl. ¶¶ 11, 22, 30). To this factual allegation, Plaintiff added only that "KitchenAid's false advice to

[2] As noted in prior briefing and in the Order, the Ninth Circuit has held that for disparaging comments to raise antitrust concerns, a plaintiff must allege facts making it plausible that the defendant's comments were "'(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals.'" *Am. Prof'll Testing*, 108 F.3d 1147, 1152 (9th Cir. 1997) (quoting *Nat'l Ass'n of Pharm. Mfrs. v. Ayerest Labs.*, 850 F.2d 904, 916 (2d Cir. 1988)).



retailers has persisted." (*Id.* ¶14). The additional statement that advice in KitchenAid's letter "has persisted" does not on its face constitute a claim that the conduct has continued for prolonged periods, and even if it did, this allegation does not cross the line between conclusory and factually plausible, as is required by the *Twombly* pleading standard. *See Twombly*, 550 U.S. at 557 n.5. Therefore, the Amended Complaint also fails to satisfy the fifth element.

The Court also held that the original Complaint failed to meet the sixth *Am. Prof'l Testing* element because "POURfect has not stated in its Complaint why it would be unable to communicate statements about its product quality to KitchenAid retailers, thus offsetting the effect of KitchenAid's allegedly faulty tests." (Dkt. # 15 at 8). Although the Amended Complaint includes the conclusory allegation that "POURfect is without practical means to neutralize KitchenAid's false statements by convincing the retailers to disregard them" (Am. Compl. ¶ 14), the Amended Complaint fails to explain *why* this is the case by supporting its assertion with plausible facts. This omission is especially glaring given that Plaintiff has only identified four retailers with whom Plaintiff would need to communicate to neutralize KitchenAid's alleged statements. In *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002), the Court granted defendant's motion to dismiss as to plaintiff's antitrust cause of action where the plaintiff did not allege facts making it plausible that the defendant's allegedly disparaging comments could not be neutralized. The Court held:

> The type of customers at issue was sufficiently sophisticated so as not to be fooled easily by [defendant]'s misinformation. Plaintiffs were capable of defending their product and winning over customers based on the merits. In the marketplace of ideas, there is competition and competing information. It is all too easy for losers in the rough-and-tumble of commerce to accuse competitors of spreading false information.

*Id.* Because Plaintiff fails to allege that Defendant engaged in "anticompetitive conduct," Plaintiff's monopolization claim should be dismissed.[3]

---

[3] Because Plaintiff has not sufficiently alleged "anticompetitive conduct," Plaintiff cannot possibly allege antitrust injury. *See Rebel Oil Co., Inc., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is




**II. PLAINTIFF'S STATE LAW CLAIMS REMAIN DEFICIENT IN THE AMENDED COMPLAINT.**

Plaintiff only added two allegations to the state law claims in the Amended Complaint that were not included in the Complaint. For both the product disparagement claim and the interference with contractual relations claim, Plaintiff 1) added the allegation that Plaintiff lost sales in an amount not less than $8,000,000 not only in 2010, as alleged in the Complaint, but also "for similar amounts in subsequent years" (Am. Compl. ¶¶ 21, 29); and 2) specified four retailers with which Plaintiff allegedly had contracts in early 2009. (*Id.*).

With regard to Plaintiff's product disparagement claim, neither of the above allegations cure, or even relate to, the claim's deficiencies as identified in KitchenAid's Motion to Dismiss. (Dkt. # 8 at 11-14). Thus, KitchenAid expressly incorporates its arguments regarding product disparagement from the Motion to Dismiss as if restated herein.

Similarly, with regard to Plaintiff's intentional interference with contractual relations claim, neither of these allegations cure the claim's deficiencies as identified in KitchenAid's Motion to Dismiss. (*Id.* at 14-15). Thus, KitchenAid expressly incorporates its arguments regarding intentional interference with contract from the Motion to Dismiss as if restated herein. Although Plaintiff identifies four retailers with which Plaintiff allegedly had prospective or existing contractual relations in early 2009, Plaintiff fails to allege that KitchenAid knew of the existence of those particular contracts. Plaintiff only alleges that "KitchenAid knew that POURfect had contractual relations with some of those trade customers and the expectancy of contractual relations with other trade customers." (Am. Compl. ¶ 33). Plaintiff fails to allege any facts explaining how KitchenAid knew of the existence of these contracts, nor does Plaintiff allege any facts regarding the timing and nature of its contracts.

---

inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition.").

LEWIS AND ROCA LLP LAWYERS

Thus, Plaintiff's state law claims should be dismissed or, in the alternative, the Court should again decline to exercise pendant jurisdiction over the state law claims.

**CONCLUSION**

For all of the foregoing reasons, KitchenAid respectfully moves the Court to dismiss Plaintiff's Complaint, with prejudice.

DATED this 24th day of May 2010.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: Steven G. Morrison
Robert H. Brunson

- and -

LEWIS AND ROCA LLP

By /s/ Randy Papetti
Randy Papetti
David Weinzweig
Attorneys for Defendant KitchenAid

CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010, I electronically transmitted the attached document to the clerk of the U.S. District court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following parties:

Richard A. Segal rasegal@gustlaw.com
Gust Rosenfeld P.L.C.
Attorney for Plaintiff

/s/ Carole Hanger