**GUST ROSENFELD P.L.C.**
201 E. Washington, Suite 800
Phoenix, AZ  85004-2327
(602) 257-7422
Richard A. Segal - 000877
rasegal@gustlaw.com

**Attorneys for** Plaintiff POURfect Products, a division
    Of DYCE LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of  Whirlpool Corporation, a Delaware corporation,<br><br>                    Defendants. | No.  2:09-cv-02660-GMS<br><br>**RESPONSE TO DEFENDANT KITCHENAID'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

<u>The § 2 Antitrust Claim</u>

KitchenAid is a lying monopolist.  The first amended complaint contains specific factual allegations showing this.  There is nothing implausible about these factual allegations.  Corporations sometimes lie.  Instances of this are reported in almost every day's newspaper.

Lying, in the form of product disparagement, is not by itself an antitrust violation.  Here, the allegations of real-life facts and commercial realities bring the case within the exception.  KitchenAid's domination of the market for mixers is so notorious that the court could probably take judicial notice of it.  Evidence however, is not required at this stage of the proceedings.  The allegations are sufficient to show KitchenAid's overwhelming share of the market throughout the United States.

1 KitchenAid has told its retailers with hundreds of outlets that POURfect's products will
2 harm the mixers and void the warranties.  It continues to do so.  Because of
3 KitchenAid's market power, the retailers accept this information at face value and
4 refuse to make POURfect products available to their customers.  No one can be
5 surprised that the retailers credit the warnings from KitchenAid.  No one can be
6 surprised by the allegations in the first amended complaint that POURfect has no
7 practical means to cause the retailers to evaluate scientific evidence and decide to
8 disregard what KitchenAid continues to say about POURfect's products.  KitchenAid
9 has used its mixer monopoly to exclude POURfect from the retail market and to deprive
10 American consumers of the opportunity to buy useful attachments at the stores where
11 they buy their mixers.

The Inapplicable Lock-In Exception

13          With one large exception, the first amended complaint contains additional
14 factual allegations to satisfy all of the deficiencies noted in the May 3, 2010 order that
15 dismissed the original complaint ("Order").  That exception will be discussed now.

16          The Order relies heavily on considerations of "switching costs",
17 "information costs" and "lock-in", taking these factors from *Univ. Avionics Sys.*
18 *Corp. v. Rockwell Int'l Corp.*, 184 F.Supp. 2d 947 (D. Ariz. 2001), *Eastman Kodak*
19 *Co. v. Image Technical Serv., Inc.*, 504 U.S. 451 (1992) and *X Areeda*, ¶ 1740.  None of
20 these authorities is relevant to this case.  They deal only with Sherman Act § 1 tying
21 claims.  Volume X of *Areeda* leaves no doubt about this.

> This Paragraph is concerned with "lock-in" and similar
> market imperfections creating sufficient market power to
> sustain per se tying claims, as analyzed by the Supreme Court
> in *Eastman Kodak Co. v. Image Technical Serv., Inc.*,
> 504 U.S. 451 (1992).

25 *X Areeda*, ¶ 1740, n. 1.  This paragraph is in Chapter 17.  Chapter 17 covers "Tying
26 Arrangements and Related Practices."

1    The "lock-in" and *X Areeda* discussion in *Univ. Avionics* relates to the

2    tying claim in that case.  Aside from the precise limitation provided by Professor

3    Areeda, the most dramatic confirmation that this analysis is irrelevant to a § 2 antitrust

4    claim is in *Kodak*, itself.  Part II of that decision, at 504 U.S. 461, covers a "tying

5    arrangement" with considerations of "locked-in customers", at 476, and "information

6    costs and switching costs" at 477.  At 480, the Supreme Court shifts definitively to

7    Part III and the § 2 claim, with no reference again to the principles that wound up in

8    *X Areeda* ¶ 1740.  It is worth noting that KitchenAid, while quick to espouse them now,

9    made no reference whatever to lock-in or switching costs in its first motion to dismiss.

10    This is why the first amended complaint makes no attempt to allege facts

11    that would be required to support a tying claim.  Obviously, those facts are not present

12    in a § 2 case in which consumers, thwarted by KitchenAid, have not bought anything.

13    <u>The Essential Allegations</u>

14    To the extent anything was missing from the original complaint, the first

15    amended complaint supplies details of KitchenAid's share of the planetary stand mixer

16    market, and the influence KitchenAid wields over the retail segment of the market

17    throughout the United States.

18    The availability of relief under the antitrust laws for these circumstances is

19    confirmed in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th

20    Cir. 1997) ("*Image Tech II*").  *Image Tech II* describes the long journey of independent

21    servicers of Kodak equipment to whom Kodak refused to sell replacement parts.  The

22    servicers filed suit against Kodak in 1987.  In 1988, following brief discovery, Kodak

23    was granted summary judgment.  Summary judgment was reversed in *Image Technical*

24    *Services, Inc. v. Eastman Kodak Co.*, 903 F.2d 612 (9th Cir. 1990) ("*Image Tech I*").

25    The Supreme Court affirmed the denial of summary judgment in *Eastman Kodak Co. v.*

26    *Image Technical Serv., Inc.*, 504 U.S. 451 (1992) (*Image Tech II* refers to the Supreme

1   Court decision as "*Kodak*", which will be done here.)  After remand, the case proceeded

2   to trial only as to the Sherman Act § 2 claims, and without the tying claim.  *Image*

3   *Tech II* followed that trial, and, with some exceptions, affirmed the verdict against

4   Kodak.

5           *Image Tech II* is controlling authority that sets forth a number of

6   governing principles for this § 2 claim, relying primarily upon *Kodak*:

7   •   "The Supreme Court also held that Kodak's lack of market power in the

8       market for high volume photocopiers and micrographic equipment did not

9       preclude, as a matter of law, the possibility of market power in the

10      derivative aftermarkets for parts and service."  125 F.3d, at 1201.

11  •   "Monopoly power is 'the power to control prices or exclude

12      competition.'"  125 F.3d, at 1202.

13  •   "Market power can be proven by either direct or circumstantial evidence."

14      *Id.*

15  •   "Ultimately what constitutes a relevant market is a factual determination

16      for the jury."  125 F.3d, at 1203.

17  •   "First, the [*Kodak*] Court held that service and parts could constitute

18      separate markets."  *Id.*

19  •   "Second, the Supreme Court held that a single brand could constitute a

20      separate market."  *Id.*

21  •   "The [*Kodak*] Court also recognized however, that the market definition

22      here could 'be determined only after a factual inquiry into the commercial

23      realities faced by consumers.'"  *Id.*

24  •   "The second element of a § 2 monopoly claim, the 'conduct' element, is

25      the use of monopoly power 'to foreclose competition, to gain a

26      competitive advantage, or to destroy a competitor.'"  125 F.3d, at 1208.

1      *Image Tech II*, informed by *Kodak*, sets forth a complete analysis of the

2      factual inquiry that is required in a § 2 monopolization claim.  KitchenAid has used its

3      market power to exclude POURfect from the retail market for aftermarket attachments

4      for KitchenAid planetary stand mixers in the United States.  For the same reasons that

5      the independent servicers of Kodak equipment survived a motion for summary

6      judgment, the first amended complaint, *a fortiori,* should survive a motion to dismiss for

7      failure to state a claim.

8                              Disparagement as Antitrust Violation

9              POURfect concedes that it must satisfy the factors in *American*

10     *Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal*, 108 F.3d 1147

11     (9th Cir. 1997).  In the Order this case is referred to as *Am. Prof'l Testing*.  The bound

12     volume uses the letters *APTS*.  In an instructive case recently applying it, it is referred to

13     as *Harcourt Brace*.  *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 679 F.Supp. 2d 1120

14     (C.D. Cal. 2009).  In denying a motion to dismiss just like this one, the district court

15     carefully examined the "*Harcourt Brace* factors."  Factual allegations in *TYR* were

16     found to overcome the presumption that disparaging statements about products have a

17     *de minimus* effect on competition.  What happened was that Speedo allegedly paid the

18     Olympic team head coach to claim that Speedo competitive swimsuits were superior to

19     those of its competitors.

20                    For purposes of this motion [to dismiss] the court finds that
                      TYR properly pleads that the disparaging statements are
21                    "provably false" . . .; that Schubert [the coach] essentially told
                      the national team that the Speedo LZR could be the difference
22                    between making the Olympic team or staying home . . .; that
                      the swimmers who heard Schubert were likely persuaded . . .;
23                    that athletes had no way of knowing that Schubert's claims of
                      a "2% advantage" were false . . .; that Schubert's disparaging
24                    comments began at least in September 2007 and continued at
                      least through April 2008 . . .; and that Schubert's position as
25                    Olympic team head coach gives his statements "a degree of
                      credibility that would never attach to statements made by
26                    equipment manufacturers. . . ."

1    679 F.Supp.2d at 1133.

2            In denying the motions to dismiss, the *TYR* court was specifically mindful

3    of *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,

4    129 S.Ct. 1937 (2009).  679 F.Supp. 2d at 1127.

5            The first amended complaint contains specific factual allegations that

6    parallel those in *TYR*.  KitchenAid is more than just a competitor, it is the dominant

7    manufacturer of planetary stand mixers.  Its retailers could not be expected to do

8    anything other than accept what KitchenAid had to say about potential harm to the

9    product.  The retailers had no way of knowing or finding out that KitchenAid's

10   warnings were false.  Its position gave it great credibility.  POURfect was in no better

11   position to get retailers to disregard what KitchenAid said than Speedo's competitors

12   were to have the swimmers ignore the advice of the Olympic team coach.

13           Although the *Harcourt Brace* factors are definitive, it is essential to

14   recognize that the case did not involve a motion to dismiss.  It was an appeal following

15   a trial.

16           The first amended complaint contains additional, specific, factual

17   allegations supplying everything the Order found to be missing, with the exception of

18   inapposite standards for a § 1 tying case.  POURfect should be allowed to proceed with

19   its § 2 claim against KitchenAid.

20                                    The State Law Claims

21           POURfect incorporates herein its response to the first motion to dismiss

22   regarding the state law claims.  Additional allegations in the first amended complaint

23   have reinforced those claims with specifics regarding KitchenAid's conduct.

24           One of KitchenAid's arguments illustrates its approach to this entire

25   lawsuit.  The allegation that "KitchenAid knew that POURfect had contractual relations

26   with some of those trade customers and the expectancy of contractual relations with

1   other trade customers" "fails to allege any facts explaining how KitchenAid knew of the

2   existence of those contracts. . . ."  Motion to Dismiss, ¶ 12.  There is no pleading

3   standard that requires an allegation of knowledge to be accompanied by the details of

4   how the knowledge was acquired.  KitchenAid's unsubstantiated approach to pleading

5   would make all disclosures and discovery redundant.  The disclosure and discovery

6   rules are recognition of the limited detail that is required in a complaint.  The first

7   amended complaint contains factual allegations sufficient to state claims for product

8   disparagement and interference with contractual relations.

9                                    Conclusion

10              The motion to dismiss plaintiff's amended complaint should be denied.

11   POURfect does not seek leave for further amendments.

12              Respectfully submitted: June 9, 2010.

13                                    GUST ROSENFELD P.L.C.

14                                    By   s/ Richard A. Segal #000877
                                          Richard A. Segal
15                                        Attorneys for Plaintiff

16                          **CERTIFICATE OF SERVICE**

17              I hereby certify that on June 9, 2010, I electronically filed the foregoing
18   document with the Clerk of the Court using the CM/ECF system which will send
     notification of such filing to the following to attorneys for Defendant KitchenAid:
19
                          Randy Papetti - RPapetti@LRLaw.com
20                   David Weinweig - David_Weinzweig@LRLaw.com
                                    LEWIS AND ROCA
21                        40 N. Central Avenue, 19th Floor
                               Phoenix, Arizona 85004-4429
22
                      Steven Morrison - steve.morrison@nelsonmullins.com
23                   Robert Brunson - Robert.brunson@nelsonmullins.com
                          NELSON MULLINS RILEY & SCARBOROUGH, LLP
24                              1320 Main Street, 17th Floor
                                   Columbia, SC  29201
25
     By  s/ C.L. Scherff
26