LEWIS AND ROCA LLP
LAWYERS

40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Randy Papetti, State Bar No. 014586
 Direct Dial:  (602) 262-5337
 Direct Fax:  (602) 734-3865
 EMail:  RPapetti@LRLaw.com
David Weinzweig, State Bar No. 018687
 Direct Dial:  602 262-5358
 Direct Fax:  602 734-3883
 EMail:  David_Weinzweig@LRLaw.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main St., 17th Floor
Columbia, SC  29201
(803) 255-9410

Stephen G. Morrison (Pro Hac Vice)
 E-Mail: Steve.Morrison@nelsonmullins.com
Robert H. Brunson (Pro Hac Vice)
 E-Mail: Robert.Brunson@nelsonmullins.com

Attorneys for Defendant KitchenAid

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>             Plaintiff,<br><br>      vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>             Defendant. | No. CV 2009-02660-PHX-GMS<br><br>**DEFENDANT KITCHENAID'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS THE AMENDED COMPLAINT** |

Defendant KitchenAid submits this Reply in further support of its Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") and to address the arguments made by Plaintiff in its Response to the Motion (the "Response"). For the reasons set forth below and in the Motion, KitchenAid respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety, or, in the alternative, that the Court again dismiss Plaintiff's antitrust cause of action and decline to exercise pendant jurisdiction over Plaintiff's state law claims.

**I.    PLAINTIFF FAILS TO STATE A CLAIM FOR MONOPOLIZATION.**

   **A.    Plaintiff Fails to Allege Facts Supporting a Plausible Relevant Market.**

"Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir.

2202514.1



2001) (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1105 (9th Cir. 1999)). Plaintiff has not clarified, even in the Amended Complaint, which category of products constitutes the relevant market allegedly being monopolized by KitchenAid. Rather, Plaintiff's Response creates additional confusion as to the category of products constituting the relevant market allegedly being monopolized. In the Response, Plaintiff emphasizes KitchenAid's alleged monopoly power in planetary sand mixers ("PSM"), as opposed to monopoly power in some aftermarket for PSMs. (*See* Dkt. #18 at 1 ("KitchenAid's domination of the market for mixers is so notorious that the court could probably take judicial notice of it. Evidence however, is not required at this stage of the proceedings. The allegations are sufficient to show KitchenAid's overwhelming share of the market throughout the United States.")); *id* at 3 ("To the extent anything was missing from the original complaint, the first amended complaint supplies details of KitchenAid's share of the planetary stand mixer market, and the influence KitchenAid wields over the retail segment of the market throughout the United States."). But neither the Complaint nor the Amended Complaint alleges claims premised on monopoly power in PSMs; rather, the claims all are premised on alleged monopoly power in an aftermarket for attachments for PSMs, or some subset of such an aftermarket, for PSMs. (*See* Am. Compl. ¶¶ 6, 7, 11, 13, and ¶ 3 of Antitrust Prayer for Relief). Regardless of what category of products Plaintiff intended to allege as the relevant market, Plaintiff's failure to make that intention clear through allegations in the Amended Complaint is grounds for dismissal. *See, e.g., Audo Car Stereo, Inc. v. Little Guys, Inc.*, No. 04 C 3562, 2004 WL 3019298, at *7 (N.D. Ill. Dec. 28, 2004) (dismissing antitrust complaint where plaintiff referenced different categories of products without specifying which category was the relevant market).

In addition, Plaintiff's Response does not address the Amended Complaint's failure to add any allegations curing the following deficiency identified in the Court's Order dismissing the original Complaint (the "Order"):


> "'Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.'" *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N. D. Cal. 2008) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997)). Here, POURfect has failed to allege any facts indicating that the Scrape-a-Bowl is interchangeable with either the KitchenAid brand or other similar products on the market, nor has POURfect alleged facts regarding how the prices of some aftermarket attachments affect the demand for other attachments. Therefore, POURfect's Complaint does not survive a Rule 12(b)(6) motion. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (affirming dismissal of plaintiff's antitrust complaint where plaintiff failed to allege "that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within this geographic market").

(Dkt. # 15 at 7 n.1). The Amended Complaint did not add any allegations of interchangeability of products, cross-elasticity of demand, or price in general. Plaintiff also did not clarify whether any other company – aside from Plaintiff– manufactures products in the alleged relevant market.

Finally, assuming Plaintiff intends to allege a relevant product market of aftermarket attachments (or some subset of aftermarket attachments) for KitchenAid brand PSMs, the antitrust cause of action fails for the additional reason that Plaintiff has not alleged facts establishing the "very limited circumstances" in which the relevant market may be limited to an aftermarket for a single brand of product. In its Response, Plaintiff argues that this Court erred in applying the four requirements recognized in *Univ. Avionics Sys. Corp. v. Rockwell Int'l Corp.*, 184 F. Supp. 2d 947, 954 (D. Ariz. 2001) to Plaintiff's monopolization claim. Plaintiff argues that "[t]he 'lock-in' and *X Areeda* discussion in *Univ. Avionics* relates to the tying claim in that case" and not to the monopolization claim. (Dkt. # 18 at 3). Plaintiff is incorrect. As a matter of law, a plaintiff must define the relevant product market for either a Section 1 or Section 2 claim. In *Univ. Avionics*, the Court states:

> Universal argues that Collins has violated the antitrust laws in three ways: 1) by attempting to monopolize, and actually monopolizing, the sale of FMSs for aircraft equipped with a Collins FCS; 2) by tying the sale of a Collins FCS to the purchase of an inferior and more expensive Collins FMS; and 3) by entering into exclusive dealing arrangements with OEMs



that require OEMs to buy and install Collins FMS products. Defining the relevant product market is a fundamental element of each of these antitrust claims.

*Univ. Avionics*, 184 F. Supp. 2d at 952 (footnote omitted). The Court then, in a single analysis, determined that plaintiff's alleged relevant product market failed for purposes of all plaintiff's antitrust claims. *Id.* at 952-59 ("Because Universal did not present legally sufficient evidence that Collins customers faced significant information costs, and because Universal's proffered relevant market does not comport with market realities, **its aftermarket antitrust claims** fail as a matter of law.") (emphasis added). The following excerpt from *Univ. Avionics*, which the Court cited in its Order dismissing Plaintiff's original Complaint, makes it clear that the four requirements for limiting a relevant product market to an aftermarket for a single brand of product apply in the monopolization context and are thus in no way limited to the tying context:

> Because it makes no economic sense to punish a manufacturer for asserting the "natural" monopoly in the sale and distribution of its own products, courts have historically declined to limit their antitrust analysis to a defendant's brand of products alone. *Metzler v. Bear Automotive Service Equipment Co.,* 19 F.Supp.2d 1345, 1354 (S.D.Fla.1998). However, in very limited circumstances it is possible for "switching costs," "information costs," and a "lock-in" to create a potential for aftermarket power in the derivative aftermarkets for the manufacturer's own equipment.

*Id.* at 954 (citing *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 477, (1992)). These requirements are routinely imposed upon monopolization claims in jurisdictions other than the District of Arizona as well. *See, e.g.*, *Harrison Aire, Inc. v. Aerostar Intern., Inc.*, 423 F.3d 374, 382-85 (3d Cir. 2005) (requiring showing of change in policy, information cots, and switching costs where plaintiff alleged monopoly over aftermarket products for single brand of product); *SMS Sys. Maint. Services, Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 18 (1st Cir. 1999) (same); *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535, 2010 WL 1691790, at *9-13 (N.D. Cal. Apr. 23, 2010) (same); William C. Holmes, *Antitrust Law Handbook*, § 3:4 (2007-2008 ed.) (explaining in a chapter entitled "Actual monopolization – Defining the relevant market and monopoly power" that the *Kodak* court's single brand market conclusion "reflected an



exceptional fact situation, in which customers were unable to switch to other suppliers because 'locked in' to Kodak parts by their prior equipment purchases").

Here, Plaintiff admits that it has not alleged facts in support of the four factors from *Univ. Avionics*. (*See* Dkt. # 18 at 3).[1]  Because Plaintiff is required, as recognized in the Court's Order and in numerous cases, to allege facts making the four factors from *Univ. Avionics* plausible if Plaintiff would like to limit the relevant product market to aftermarket products for KitchenAid PSMs, Plaintiff's antitrust cause of action must be dismissed.

**B.    The Amended Complaint Fails to Allege Plausible Facts With Sufficient Detail to Show That KitchenAid Possesses Monopoly Power.**

Even if Plaintiff had defined a relevant product market and alleged facts making such product market plausible, the Amended Complaint should be dismissed for failure to allege facts plausibly supporting its assertion that "KitchenAid has market power to exclude competition in the aftermarket for KitchenAid PSM attachments in all states of the United States." (Am. Compl. ¶ 7).  In its Response, Plaintiff does not explain why its antitrust cause of action should not be dismissed for failure to allege facts establishing monopoly power through direct or circumstantial evidence.  Plaintiff's Amended Complaint fails to allege facts supporting KitchenAid's possession of dominant market share (or any share) of the relevant product market, the existence of barriers to entry in the relevant market, supracompetitive prices in the relevant market, or restricted ability of competitors to increase output in the short run in the relevant market.  In arguing against the applicability of the *Univ. Avionics* factors, Plaintiff's Response includes the following statement: "Obviously, those facts [i.e. facts supporting the *Univ. Avionics* factors] are not present in a § 2 case in which consumers, thwarted by KitchenAid, have not bought anything." (*Id.*).  This statement, however, goes to the heart of why Plaintiff's antitrust allegations are insufficient – Plaintiff is not alleging that KitchenAid is selling a product that competes with Plaintiff's product and that KitchenAid's monopoly power over such

---
[1] Not only has Plaintiff failed to allege facts making it plausible that KitchenAid could charge or has charged supracompetitive prices in the relevant product market, but Plaintiff even fails to allege that KitchenAid competes in the relevant product market.



product allows KitchenAid to charge supracompetitive prices. Instead, Plaintiff is merely alleging that consumers "have not bought anything," causing Plaintiff to lose sales to the group of consumers (1) who shop at four particular retailers, (2) who would have purchased a "Scrape-A-Bowl" if it had been available in those retailers' stores, and (3) who did not purchase the "Scrape-A-Bowl" from some other channel of distribution (e.g. another retailer or www.pourfectbowl.com). These allegations, even if accepted as true, do not make KitchenAid an unlawful monopolist over any relevant market and do not state a claim under the antitrust laws.

Because the Amended Complaint fails to allege facts or plausible theories supporting KitchenAid's possession of unlawful monopoly power – either through direct or circumstantial evidence – Plaintiff's antitrust cause of action should be dismissed.

**C.     The Amended Complaint Fails to Allege Plausible Facts Indicating That KitchenAid Engaged in Anticompetitive Conduct.**

In dismissing the original Complaint, the Court pointed out that "POURfect has not alleged that KitchenAid caused significant and more-than-temporary harmful effects on competition generally (as opposed to alleging harmful effects merely on itself)." (Dkt. # 15 at 9) (citing *LiveUniverse, Inc. v. MySpace, Inc.*, 2007 WL 6865852, at *11 (C.D. Cal. June 5, 2007). As explained in KitchenAid's pending Motion, however, Plaintiff's Amended Complaint does not allege any additional facts to cure this deficiency. Plaintiff's Response also does not address this deficiency. Instead, Plaintiff's Response argues that the Amended Complaint alleges facts supporting the six elements identified in *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147 (9th Cir. 1997). (*See* Dkt. # 18 at 5-6). Even if Plaintiff had alleged facts supporting each of the six *Harcourt* elements – which, as discussed below, Plaintiff has not – Plaintiff would not be relieved of its obligation to allege facts making it plausible that KitchenAid's disparaging comments caused significant and more-than-temporary harmful effects on competition generally (as opposed to alleging harmful effects on Plaintiff). *See TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, No. SACV 08-529, 2010 WL 1948608, at *8 (C.D. Cal. May 3, 2010)



(expressly holding, in a case involving an antitrust claim based on disparaging comments, that the requirement of showing enduring effects on competition generally was separate from, and in addition to, the requirement of showing each of the six elements from *Harcourt*).

Regardless, Plaintiff has not alleged facts making each of the six *Harcourt* elements plausible. Plaintiff argues in its Response that the facts alleged in the Amended Complaint "parallel" those in the case of *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 679 F.Supp. 2d 1120 (C.D. Cal. 2009), a case in which the Court found that plaintiff sufficiently alleged the six *Harcourt* elements at the motion to dismiss stage. The *TYR Sport* case, however, is easily distinguishable from the present case. In *TYR Sport*, TYR's monopolization claim was based on allegations that Speedo paid USA Swimming in return for the agreement of USA Swimming and, in particular, USA Swimming's head coach to make false statements to its swimmers that Speedo products were superior to its rivals, such as TYR. The Court held that it would have rejected plaintiff's antitrust claims "[i]f the facts alleged here established no more than an unfair vilification of TYR's products," but the Court emphasized that "[t]he Complaint alleges that [the USA Swimming coach] went beyond criticism and threatened athletes who chose to wear the TYR product." *Id.* at 1131. Specifically, the Olympic coach allegedly told the swimmers that they should wear Speedo equipment, or they might end up watching the Olympics on NBC. *Id.* Here, even if KitchenAid's May 2009 letter could be characterized as "an unfair vilification" of Plaintiff's product, Plaintiff has not alleged that KitchenAid threatened any potential purchasers of Plaintiff's product.

In addition, the *TYR Sport* excerpt cited in Plaintiff's Response highlights at least two other important distinctions:

> For purposes of this motion [to dismiss] the court finds that TYR properly pleads that the disparaging statements are "provably false" . . .; that Schubert [the coach] essentially told the national team that the Speedo LZR could be the difference between making the Olympic team or staying home . . .; that the swimmers who heard Schubert were likely persuaded . . .; that athletes had no way of knowing that Schubert's claims of a "2% advantage" were false . . .; **that Schubert's disparaging comments began at least in September 2007 and continued at least through April 2008**.

7



1  ..; **and that Schubert's position as Olympic team head coach gives his statements "a degree of credibility that would never attach to statements made by equipment manufacturers**. . . ."

(Dkt. #18 at 5 (quoting *TYR Sport, Inc.*, 679 F.Supp.2d at 1133) (emphasis added).[2] Here, the Amended Complaint only alleges that KitchenAid made disparaging comments once, in a May 2009 letter. Although Plaintiff states in its Response that KitchenAid "continues to" make disparaging statements regarding Plaintiff's product, Plaintiff may not amend its Complaint through unfounded assertions in the Response. Also, the alleged disparaging statements in the Amended Complaint are made by KitchenAid, an equipment manufacturer, and Plaintiff has not alleged facts making it plausible that Plaintiff could not neutralize the effects of KitchenAid's statements. As explained in *TYR Sport*, "Schubert's position as Olympic team head coach gives his statements 'a degree of credibility that would never attach to statements made by equipment manufacturers.'" *TYR Sport, Inc.*, 679 F.Supp.2d at 1133. The statements in the instant case were made in a letter to sophisticated retailers, not to athletes whose careers were in the hands of the person making the disparaging statements. In *TYR Sport*, the plaintiff equipment manufacturer could not have neutralized the threats of the Olympic team head coach by communicating directly with the swimmers. Here, on the other hand, Plaintiff has not alleged facts making it plausible that Plaintiff could not have neutralized KitchenAid's statements by communicating its test results to the four retailers who allegedly received KitchenAid's May 2009 letter.

With respect to the "ability to neutralize" element from *Harcourt*, this case is more closely analogous to *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002), in which the plaintiff, the defendant, and the recipient of the disparaging statements were all sophisticated participants in the marketplace. In *Tate*, the Court

---

[2] It is worth noting that, in a subsequent opinion in the *TYR Sport* case, the Court granted summary judgment on the disparagement antitrust claim, finding that the plaintiff failed to meet the requirement of showing that the statements "continued for prolonged periods." The Court expressly rejected the plaintiff's argument that the "prolonged period" test was a low burden to meet and held that "[f]ive sporadic statements spread out over the course of more than a year are not the sort of systematic advertising capable of significantly affecting competition." *TYR Sport, Inc.*, No. SACV 08-529, 2010 WL 1948608, at *12.

granted the defendant's motion to dismiss as to plaintiff's antitrust cause of action where the plaintiff did not allege facts making it plausible that the defendant's allegedly disparaging comments could not be neutralized, stating:

> The type of customers at issue was sufficiently sophisticated so as not to be fooled easily by [defendant]'s misinformation. Plaintiffs were capable of defending their product and winning over customers based on the merits. In the marketplace of ideas, there is competition and competing information. It is all too easy for losers in the rough-and-tumble of commerce to accuse competitors of spreading false information.

*Id.*

Because Plaintiff's Amended Complaint fails to allege facts constituting "anticompetitive conduct," Plaintiff's antitrust cause of action should be dismissed.

## II. PLAINTIFF'S STATE LAW CLAIMS REMAIN DEFICIENT IN THE AMENDED COMPLAINT.

In response to KitchenAid's Motion to Dismiss the state law claims in the Amended Complaint, Plaintiff argues that KitchenAid misunderstands the pleading standards. (Dkt. # 18 at 6-7). Specifically, Plaintiff argues that its allegation in the Amended Complaint that "KitchenAid knew that POURfect had contractual relations with some of those trade customers and the expectancy of contractual relations with other trade customers" is sufficient.

One of the elements of intentional interference with contract is the interferer's knowledge of the contract or of the business expectancy which was lost by the plaintiff. *See, e.g., Dube v. Likins*, 216 Ariz. 406, 412, 167 P.3d 93, 99 (App. 2007). Here, Plaintiff has simply alleged the conclusion that this element is present, but has not alleged a single fact making such a conclusion plausible. In *Twombly*, the Supreme Court held that "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). Because Plaintiff has simply recited the elements of the state law causes of action, Plaintiff's state law claims should be dismissed, or, in the alternative, the Court should again decline to exercise pendant jurisdiction over the state law claims.

## CONCLUSION

For all of the foregoing reasons, and for the reasons stated in KitchenAid's Motion to Dismiss, KitchenAid respectfully moves the Court to dismiss Plaintiff's Amended Complaint, with prejudice.

DATED this 17th day of June 2010.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:  Steven G. Morrison
     Robert H. Brunson

- and -

LEWIS AND ROCA LLP

By /s/ Randy Papetti
   Randy Papetti
   David Weinzweig
Attorneys for Defendant KitchenAid

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2010, I electronically transmitted the attached document to the clerk of the U.S. District court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following parties:

Richard A. Segal rasegal@gustlaw.com
Gust Rosenfeld P.L.C.
Attorney for Plaintiff

/s/ Carole Hanger