**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| POURfect Products, a division of DYCE LLC, an Arizona limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>KitchenAid, a division of Whirlpool Corporation, a Delaware corporation,<br><br>    Defendant. | No. CV-2009-02660-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss (Doc. 17). For the following reasons, the Court grants the Motion.

## BACKGROUND

Defendant KitchenAid ("KitchenAid" or "Defendant") manufactures and sells stand mixers and mixer attachments directly to consumers and through retailers. KitchenAid allegedly sells approximately 80% of the stand mixers in the United States and 90% of the beater attachments for KitchenAid stand mixers. Plaintiff POURfect Products ("POURfect" or "Plaintiff") makes and sells an aftermarket beater attachment (the "Scrape-A-Bowl") for use with KitchenAid stand mixers.

In early 2009, POURfect had existing and prospective contracts with unspecified retailers to supply the Scrape-A-Bowl, which allegedly would have resulted in sales of not

less than $8,000,000 in 2010. But, in May 2009, KitchenAid advised its trade customers, which were four major retailers, that "bowl-scraper accessories" may shorten the life of the stand mixer motor and cause damage that would be excluded from warranty coverage. KitchenAid advised its retailers that it had performed tests that showed that the use of bowl-scraper accessories caused motor temperatures to exceed those allowed under the Underwriter Laboratories' requirements.

The Amended Complaint alleges, however, that KitchenAid's tests did not conform to the Underwriter Laboratories' testing requirements and did not fairly test the bowl-scraper beaters in a manner generally representative of actual service conditions. Further, the Amended Complaint alleges that the use of KitchenAid attachments caused greater motor problems than did Scrape-A-Bowl beaters under actual service conditions. POURfect claims that KitchenAid's false and misleading statements to its retailers, with a specific intent to destroy competition, has caused POURfect to lose profits based on beater attachment sales.

Count One of POURfect's Complaint alleges that KitchenAid violated Section 2 of the Sherman Act (15 U.S.C. § 2). Counts Two and Three allege state law claims based on product disparagement and interference with contractual relations. On May 3, 2010, the Court issued an order granting Defendant's previous motion to dismiss in part, dismissing Plaintiff's federal claim with leave to amend and declining to exercise pendent jurisdiction over the remaining two state law claims. (Doc. 15). Plaintiff filed an amended complaint on May 13, and Defendant again moves to dismiss.

**LEGAL STANDARD FOR MOTION TO DISMISS**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**DISCUSSION**

**I.     Section 2 of the Sherman Act**

As explained in its previous Order, a claim for actual monopolization under Section 2 of the Sherman Act requires (1) the "possess[ion] [of] monopoly power," (2) that power exercised "in a properly defined relevant market," and (3) "anticompetitive conduct." (Doc. 15) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)).

**A.     Relevant Market**

Dismissal is appropriate because Plaintiff has not alleged a relevant market. "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). The "relevant market" includes both the relevant geographic market, as well as the relevant product market, including "product use, quality, and description." *Id.* (internal quotation omitted).

The Amended Complaint repeatedly speaks of monopoly power in the stand-mixer market, the overall mixer-attachment market, and the market for various KitchenAid mixer attachments, none of which necessarily bears a sufficient relationship in and of itself to aftermarket scraper attachments for KitchenAid mixers. For instance, the Amended Complaint alleges a market of attachments for KitchenAid mixers, "market power" "with

respect to" the KitchenAid stand mixer (but not necessarily with respect to aftermarket attachments), and the "relevant market of aftermarket attachments" generally (without any specific mention of KitchenAid-brand stand mixers). (*Id.* at ¶ 6, 7, 12, 13). Further, when discussing KitchenAid's attachment's, the Amended Complaint discusses the "dough hook, grain mill, meat grinder and ice cream maker," (*Id.* at ¶ 11), without clarifying whether these types of attachments are part of the relevant market and without ever alleging that KitchenAid makes an attachment similar to the Scrape-A-Bowl. It appears that both KitchenAid and POURfect make numerous types of aftermarket attachments, for which the Scrape-A-Bowl and any alleged KitchenAid equivalent are but one type. Accordingly, clarification of the market is critical. The Response likewise offers no clarification, alluding to "the market" generally, the "market for mixers," the market for "useful attachments," and the "market for aftermarket attachments for KitchenAid" mixers. (Doc. 18 at 1–5).

  Despite the Amended Complaint's failure to clarify the relevant market or submarket, to the extent Plaintiff intends to allege a relevant market for a particular type of attachment (i.e. a bowl-scraper style attachment like the Scrape-A-Bowl) for use on KitchenAid stand mixers, Plaintiff must meet the standard set forth in *Universal Avionics Systems Corporation v. Rockwell International Corporation*, 184 F. Supp.2d 947 (D. Ariz. 2001). Upon further review of the claims asserted, it again seems that Plaintiff's claims for antitrust injury make sense only when considered within the bounds of a market limited to particular types of aftermarket attachments for KitchenAid stand mixers. Plaintiff misinterprets the Court's previous citation to *Universal Avionics*, which explained that courts are generally reluctant to define a relevant product market as a single brand of product, such as derivative aftermarkets for a particular manufacturer's line of base products. *Id.* at 954. For example, the proposed relevant market in *Universal Avionics* was flight management systems for aircraft equipped with integrated flight control systems manufactured by the plaintiff's competitor, *id.*, which is analogous to a potential market in this case for particular types of aftermarket attachments to KitchenAid stand mixers. "Because it makes no economic sense to punish a manufacturer for asserting the 'natural' monopoly in the sale and distribution of

its own products, courts have historically declined to limit their antitrust analysis to a defendant's brand of products alone." *Id.*

"However, in very limited circumstances it is possible for 'switching costs,' 'information costs,' and a 'lock-in' to create a potential for aftermarket power in the derivative aftermarkets for the manufacturer's own equipment." *Id.* Specifically, for such a lock-in to occur, a plaintiff must allege facts making the following four factors plausible:

    1. High "switching costs": A substantial number of customers must have made brand-specific investments that still have a useful life but that are substantially unrecoverable if they shift to other brands;

    2. High "information costs": A substantial number of those customers must be too ignorant of "lifecycle" prices to protect themselves by judicious interbrand comparisons or by contract before they become locked in;

    3. Ability to exploit ignorant customers: The knowledgeable customers who can protect themselves must either be unimportant to the defendant or be protected by effective price discrimination from above market prices paid by the ignorant; and

    4. Ability to exploit must be "substantial": The defendant's resulting ability to exploit the ignorant must be "substantial."

*Id.* at 955. The Court speculated in its previous Order that POURfect intended to define the relevant product market as the aftermarket for a single brand of product—particular types of aftermarket attachments for KitchenAid stand mixers.

Nonetheless, Plaintiff's Response to the present Motion asserts that *Universal Avionics* is irrelevant and that it need not allege facts relevant to these factors to state a claim under Section 2 of the Sherman Act. Contrary to Plaintiff's assertion, this analysis of the relevant product market is applicable to both Sherman Act Section 1 and Section 2 claims. *See Univ. Avionics*, 184 F. Supp.2d at 952 (explaining that defining the relevant product market is a fundamental element of both Section 1 and Section 2 Sherman Act claims); *see also U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993) ("Defining the market is a necessary step in any analysis of market power and thus an indispensable element in the consideration of any monopolization or attempt case arising under section 2."). To the extent Plaintiff concedes it does not allege any such facts, the Court finds that Plaintiff

has not alleged a relevant product market of particular aftermarket attachments to KitchenAid stand mixers.

Even if Plaintiff is correct that the relevant market is not so narrow as to be required to meet the *Universal Avionics* test, Plaintiff still has not alleged facts defining the relevant market as a broader submarket, *i.e.* as a market for mixer attachments generally, and certainly not has alleged facts supporting a generalized market of all mixer-related products. Typically, a product market includes "the pool of goods or services that qualify as economic substitutes because they enjoy reasonable interchangeability of use and cross-elasticity of demand." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). Plaintiff offers no allegation or argument that stand mixers and/or any or all mixer attachments are largely economic substitutes or reasonably interchangeable, or that they enjoy cross-elasticity of demand.

Plaintiff likewise has not alleged facts supporting such a submarket. In considering whether a relevant market exists, the Ninth Circuit considers "whether 'the product and its substitutes are reasonably interchangeable by consumers for the same purpose,' as well as 'industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.'" *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, ___F.3d___, 2010 WL 2701095, at *10 (9th Cir. 2010) (citing *M.A.P. Oil Co., Inc., v. Texaco Inc.*, 691 F.2d 1303, 1306 (9th Cir. 1982) (internal quotations omitted)). Plaintiff alleges no facts relating to the recognition of any submarket as a separate economic entity, no facts relating to any group of products' peculiar characteristics and uses, and no facts relating to production facilities, distinct customers, or prices.

**B.  Monopoly Power**

Even assuming Plaintiff had alleged a relevant market, Plaintiff also has failed to allege that KitchenAid possessed monopoly power within the relevant market. Monopoly power is "'the power to control prices or exclude competition.'" *Forsyth v. Humana, Inc.*,

114 F.3d 1467, 1475 (9th Cir. 1997) (quoting *Grinnell*, 384 U.S. at 571). To allege monopoly power, a plaintiff must allege facts supporting either a direct-proof theory or a circumstantial-evidence theory of liability. *Forsyth*, 114 F.3d at 1475. The direct-proof path requires allegations of "restricted output and supracompetitive prices," *see id.*, neither of which is alleged in the Amended Complaint. The circumstantial-evidence theory requires the plaintiff to allege facts that: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* at 1476 (internal quotations omitted). As discussed *supra*, the Amended Complaint does not properly define the relevant market and thus does not allege monopoly power. Even so, Plaintiff has failed to allege the second and third elements required to utilize circumstantial-evidence theory of monopoly power. With respect to KitchenAid's alleged dominant share of the market, the Response concedes that its allegations focus on KitchenAid's dominance of the market for stand mixers, *not* the market for KitchenAid stand mixer *attachments*. POURfect's claims, however, appear to be based on aftermarket attachments, not on stand mixers themselves; accordingly, Plaintiff's discussion of the stand mixer market is inapposite. To the extent the Amended Complaint could be read broadly to support an argument that KitchenAid possesses monopoly power in the alleged aftermarket-attachment market, Plaintiff has not pointed to any such facts. Likewise, Plaintiff's Response points to no part of the Amended Complaint alleging that competitors face significant barriers to entry or that existing competitors lack the capacity to increase their output in the short run.

### C. Anticompetitive Conduct

POURfect's Sherman Act claim is based on allegations that KitchenAid disparaged POURfect's product to four retailers in May 2009. As the Court stated in its previous Order, the disparagement of a rival ordinarily does not result in anticompetitive conduct sufficient to state a Section 2 claim. *Am. Prof'l Testing Servs., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'n, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). Therefore, Plaintiff must make, in addition to other requirements, at least "a 'preliminary showing of significant and

1 more-than-temporary harmful effects on competition (and not merely upon a competitor or customer)' before these practices can rise to the level of exclusionary conduct."[1] *Id.* (quoting 3 P. Areeda & D. Turner, *Antitrust Law* ¶ 737b at 278 (1978)); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (holding that an act is anticompetitive only if it "harm[s] the competitive *process* and thereby harm[s] consumers" because "harm to one or more *competitors* will not suffice"). The Amended Complaint does not appear to add any facts to allege harm on the competitive *process*, nor does the Complaint explain how the alleged harm is to the competitive process as opposed to POURfect as a competitor. Rather, as with the original complaint, the Amended Complaint focuses on harm to POURfect, rather than on harm to competition generally. In fact, while the Amended Complaint now alleges that KitchenAid products constitute a large share of both the stand mixer and KitchenAid-attachment markets, nothing else in the Amended Complaint discusses harm to *other* competitors. Rather, the Amended Complaint seems to be based on the faulty premise that other companies, which may compete with both KitchenAid and POURfect, are irrelevant to stating a Sherman Act claim. As the Response offers no argument why a discussion of the market and its many competitors is not essential, the Court again dismisses Plaintiff's claim.

## II. The Court Declines To Exercise Pendant Jurisdiction.

When a district court "dismisses [federal claims] leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). Only in the "unusual" case should federal courts retain jurisdiction over the state law claims. *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994). In this determination, courts consider "economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). As explained in its previous

---

[1] *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 2010 WL 1948608, at *8 (C.D. Cal. May 3, 2010), explains that the requirement of showing enduring effects on competition generally was separate from, and in addition to, the requirement of showing six factors from *Harcourt Brace*, 108 F.3d at 1152.

Order, these factors favor dismissal of the state law claims without prejudice. (Doc. 15 at 9–10).[2]

**CONCLUSION**

Plaintiff fails to sufficiently plead a claim for a violation of Section 2 of the Sherman Act. Plaintiff has not asked for further leave to amend.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 17) is **GRANTED** with respect to Count 1.

**IT IS FURTHER ORDERED** that Counts 2 and 3 are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **terminate** this action.

DATED this 30th day of August, 2010.

G. Murray Snow
United States District Judge

---

[2] In its response to the previous motion to dismiss, POURfect explained that supplemental jurisdiction is the "only" basis of jurisdiction over the state-law claims and asserted that, "[i]f there were no federal law claim, there would be no justification for the court to exercise supplemental jurisdiction over the state law claims," for to do so "would require an inappropriate exercise of the court's supplemental jurisdiction." (Doc. 12 at 5).